PRENT CORPORATION, Plaintiff-Respondent,

v.

MARTEK HOLDINGS, INC., d/b/a Mascon, a foreign
corporation, Defendant-Appellant. [Case No. 98–3552]

GOEX CORPORATION, Plaintiff-Respondent,

v.

MARTEK HOLDINGS, INC., d/b/a Mascon, a foreign
corporation, Defendant-Appellant. [Case No. 98–3553]

Court of Appeals

*Nos. 98–3552, 98–3553. Submitted on briefs April 14,
2000.—Decided August 31, 2000.*

2000 WI App 194

(Also reported in 618 N.W.2d 201.)

779

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Mark A. Schroeder* and

*Christopher A. Davies* of *Consigny, Andrews, Hemming & Grant, S.C.* of Janesville.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James A. Carney* of *Nowlan & Mouat LLP* of Janesville.

Before Eich, Roggensack and Deininger, JJ.

¶ 1.   ROGGENSACK, J.   Prent Corporation and GOEX Corporation (collectively the Buyers) contracted with Martek Holdings, Inc. (d/b/a MASCON) to provide customized software systems. When MASCON failed to provide operational systems, the Buyers sued. After a trial to the court, they were awarded damages for breach of contract and negligent misrepresentation. Because we conclude that the findings and conclusions of the circuit court fully support the Buyers' breach of contract claims, we affirm those portions of the judgments. However, because we also conclude that the economic loss doctrine precludes the Buyers' claims for negligent misrepresentation, we reverse the circuit court as to those claims.

## BACKGROUND

¶ 2.   In December of 1995, the Buyers contracted with MASCON, a Delaware corporation, for the provision of customized software programs to use for manufacturing management. In addition to describing the features, or modules, of the software MASCON would provide, the contracts also allocated certain risks, made an express warranty, disavowed all implied warranties and limited the remedies and the damages available to the Buyers. Prent agreed to pay $104,240 for the package of software and training, and GOEX agreed to pay $48,498 for a similar package. The

contracts stated that they were governed by the laws of the State of Delaware.

¶ 3.   It is undisputed that there were difficulties with the operation of the software systems from the beginning. MASCON repeatedly tried to make the systems function. However, after thirteen months of MASCON's efforts, the Buyers gave thirty-day notice that MASCON must get the systems up and running correctly or they would consider MASCON in breach of the contracts and proceed accordingly.

¶ 4.   When that thirty-day deadline was reached and the software still did not perform as had been represented, the Buyers sued to recover their losses. They sued MASCON under six theories: breach of contract, breach of express warranty, breach of implied warranty of fitness for a particular purpose, breach of implied warranty of merchantability, intentional misrepresentation and negligent misrepresentation. On MASCON's motion for summary judgment, the circuit court dismissed the claims for breach of both implied warranties.

¶ 5.   The remaining four claims were tried to the court. At the conclusion of trial, the circuit court also dismissed the breach of express warranty claim based on a failure of proof because MASCON had continued to try to fix the software until the Buyers refused its efforts. It also dismissed the claim for intentional misrepresentation because it concluded that the Buyers had not proven the element of intent. The circuit court's dismissal of those four claims has not been appealed.

¶ 6.   The circuit court also concluded that breach of contract and negligent misrepresentation had been proved. In regard to the breach of contract claim, it found that, although no completion time was stated in

the contract, after thirteen months when the Buyers gave a thirty-day notice to MASCON to have the software operational, a reasonable time had passed within which to have performed the contracts, and MASCON had failed to perform. In regard to the negligent misrepresentation claim, the court found that MASCON made untrue representations about the software that were an "inducement to get into the contract."

¶ 7. By way of damages, the court awarded breach of contract damages of $18,533.75 to GOEX and $58,300.22 to Prent. These damages represented the amounts that each company actually had paid to MASCON for software and training. While concluding that the specific terms of the contracts prevented the award of consequential damages,[1] the court determined that consequential damages had been proven which it could assess for the negligent misrepresentation claim. It then awarded $15,860.28 to GOEX[2] and $34,507.20 to Prent as compensation for the wages of the Buyers' employees who spent time trying to fix the software

[1] The agreement of the parties precluded the collection of consequential damages as a breach of contract remedy: "IN NO EVENT SHALL MASCON BE LIABLE FOR ANY DAMAGES CAUSED BY THE SYSTEM, WHETHER DIRECT OR INDIRECT, SPECIAL, OR CONSEQUENTIAL . . . ."

[2] We note the amount of the GOEX judgment is $34,406.62, exclusive of costs, which is $8.59 more than its components for breach of contract and misrepresentation. However, the Buyers do not address this issue, so we shall ignore it as well. *See Waushara County v. Graf*, 166 Wis. 2d 442, 453–54, 480 N.W.2d 16, 20 (1992).

and were thereby prevented from doing other work for their employers.[3]

¶ 8.   On motions after verdict, counsel for MAS-CON argued, as he had at trial, that the circuit court should force the Buyers to elect between breach of contract damages and misrepresentation damages because the misrepresentation was relevant only to set aside the contract. Therefore, it was inconsistent to prevail on both a breach of contract claim and a misrepresentation claim. In response, the Buyers' counsel cited *Head & Seemann, Inc. v. Gregg*, 104 Wis. 2d 156, 311 N.W.2d 667 (Ct. App. 1981) and *Tuchalski v. Moczynski*, 152 Wis. 2d 517, 449 N.W.2d 292 (Ct. App. 1989), for the proposition that election of remedies is not necessary unless the awards of damages are duplicative or inconsistent, and these damages were neither. The circuit court agreed with the Buyers, and MASCON appeals.

## DISCUSSION

**Standard of Review.**

■■■■

¶ 9.   We will not reverse factual findings made by the circuit court unless they are clearly erroneous. *See* WIS. STAT. § 805.17(2) (1997–98);[4] *Benn v. Benn*, 230 Wis. 2d 301, 307, 602 N.W.2d 65, 68 (Ct. App. 1999). However, whether the facts as found by the circuit court constitute a breach of contract under a written document is a question of law that we review *de novo.*

---

[3] The amounts awarded for negligent misrepresentation reflect a finding of thirty percent contributory negligence by the Buyers.

[4] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

*See Edwards v. Petrone*, 160 Wis. 2d 255, 258, 465 N.W.2d 847, 848 (Ct. App. 1990).

¶ 10. Whether the loss suffered by a commercial purchaser of a product is solely an economic loss is a question of law. *See Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 402, 573 N.W.2d 842, 845 (1998). Additionally, whether the economic loss doctrine should be applied to the facts as found by the circuit court is a question of law that we determine independently. *See Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.*, 148 Wis. 2d 910, 915, 437 N.W.2d 213, 215 (1989).

**Breach of Contract.**

¶ 11. MASCON argues that a breach of contract was not proved because the circuit court erred when it found that MASCON had not completed the installation of an operable software package in fourteen months. While MASCON does not dispute that fourteen months was a reasonable time in which to have fully implemented the software initially agreed to, MASCON maintains that the Buyers continuously changed what they wanted and that was the reason for the delay in installation.

¶ 12. The parties contracted to have Delaware law control the interpretation of their contracts. Wisconsin permits such an election. *See Bush v. National Sch. Studios, Inc.*, 139 Wis. 2d 635, 642, 407 N.W.2d 883, 886 (1987). Therefore, we look to Delaware law in interpreting the contracts. When there is no date certain stated for performance of a contract, it must be performed within a reasonable time. *See Martin v. Star Publ'g Co.*, 126 A.2d 238, 244 (Del. 1956); *Salisbury v. Credit Serv., Inc.*, 199 A. 674, 683 (Del. Super. Ct.

1937). What constitutes a reasonable time for perform-ance within the facts of a given case is a question of fact. *See Virginia Kid Co. v. New Castle Leather Co.*, 89 A. 367, 368 (Del. Super. Ct. 1913).

¶ 13.   The circuit court made specific findings in regard to areas where there was non-performance of the contract. It first noted that the features of the software package the Buyers wanted did change dur-ing the fourteen months at issue, and therefore, some of the delay was due to their requests for modifications of the initial contract. However, it also found that parts of the basic software package initially contracted for had not been completed. For example, it found that such basic functions as the expansion of the field from ten characters to twenty-two characters had not been done and the accounting module was not functional because the numbers in the accounting package did not compute mathematically. It characterized them as "gibberish." The circuit court also found that the thirty-day notice to complete the installation of the software was reasonable, after the Buyers had already given MASCON thirteen months to do the job, and that the basic software package was not functional at the end of the fourteen-month period. Based on these findings and others of a similar nature relating to the failure of the software systems to operate correctly, it concluded MASCON had breached its contracts with the Buyers.

¶ 14.   The factual findings of the circuit court have ample support in the record and are not clearly erroneous. Additionally, those findings fully support its conclusion that MASCON did not perform the con-tracts in a reasonable time, and therefore, it was in breach of its contracts. While MASCON contends it did not breach the contracts, it does not dispute the dam-

ages the circuit court awarded as damages for the breaches. Therefore, we affirm the decision of the circuit court in all respects in regard to breaches of the contracts and the damages awarded for those breaches.

## Negligent Misrepresentation.

¶ 15.   MASCON spends the majority of its brief arguing that the circuit court should have forced the Buyers to elect their remedies in either contract or tort. The Buyers, on the other hand, contend that election of remedies has no application here because the remedies provided by the circuit court under contract and tort theories were neither duplicative nor inconsistent. We agree with MASCON that the circuit court erred in awarding consequential damages for negligent misrepresentation; however, we do so because those claims are precluded by the economic loss doctrine.[5]

¶ 16.   The economic loss doctrine is a judicially created doctrine that precludes a commercial purchaser[6] of a product from suing in negligence or strict

---

[5] Neither party argued the economic loss doctrine to this court or to the circuit court. We would have preferred that they had, as we are always assisted in our decisions by the efforts of counsel. However, the question of whether the economic loss doctrine applies to the facts as found is a question of law, and therefore, it is a decision we make without deference to the circuit court. *See Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.*, 148 Wis. 2d 910, 915, 437 N.W.2d 213, 215 (1989). Accordingly, we examine its application to the facts as found by the circuit court.

[6] Recently the supreme court has applied the economic loss doctrine to bar the recovery of economic losses in certain consumer transactions as well. *See State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 225 Wis. 2d 305, 348, 592 N.W.2d 201, 219

787

liability to recover from the product's manufacturer a loss that is solely economic. *See Sunnyslope*, 148 Wis. 2d at 921, 437 N.W.2d at 217–18.[7] The commercial purchaser's only remedies are in contract, the law of warranties and the Uniform Commercial Code. *See id.* at 920–21, 437 N.W.2d at 217. Economic loss has been defined as that loss "in a product's value which occurs because the product is inferior in quality and does not work for the general purposes for which it was manufactured and sold." *Wausau Tile, Inc. v. County Concrete Corp.*, 226 Wis. 2d 235, 246, 593 N.W.2d 445, 451 (1999) (citation omitted). Economic loss has also been defined as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits . . . ." *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 225 Wis. 2d 305, 314, 592 N.W.2d 201, 205 (1999) (citation omitted).

¶ 17. An economic loss may be either direct or consequential. A direct economic loss is a loss in the value of the product itself. *See id.* (citing *Daanen*, 216 Wis. 2d at 401, 573 N.W.2d at 845 (further citations

(1999); *General Cas. Co. of Wisconsin v. Ford Motor Co.*, 225 Wis. 2d 353, 361, 592 N.W.2d 198, 201 (1999).

[7] Although the parties chose Delaware law to govern the interpretation of their contracts, we have concluded that Wisconsin law is the correct law to be applied to our determination of whether the economic loss doctrine applies here because the Buyers have made tort claims under Wisconsin law. Therefore, it is Wisconsin's economic loss doctrine that determines whether those claims are precluded. However, we note that Delaware employs the economic loss doctrine in similar situations too. *See Council of Dorset Condominium Apartments v. Dorset Apartments*, No. 90C–10–269, 1992 WL 240444, at *2 (Del. Super. Ct. Aug. 26, 1992); *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194 (Del. 1992).

omitted)). Other economic losses that are caused because the product is either defective or does not operate as represented are consequential economic losses. *See Wausau Tile*, 226 Wis. 2d at 246, 593 N.W.2d at 451. However, economic losses do not include property damage to property other than the defective product or a system in which it is incorporated, nor do economic losses include damage arising from personal injury caused by the product. *See Daanen*, 216 Wis. 2d at 402, 573 N.W.2d at 845; *Cincinnati Ins. Co. v. AM Int'l, Inc.*, 224 Wis. 2d 456, 461, 591 N.W.2d 869, 871 (Ct. App. 1999).

¶ 18.   The economic loss doctrine is bottomed on three policies. First, it preserves the fundamental distinction between tort and contract law, thereby permitting the parties to bargain for their obligations to one another rather than having those obligations established under tort law, which assigns obligations based on social policy choices. As the supreme court has explained, "whether a product meets a certain level of performance or a purchaser's expectations is not a matter of societal interest." *State Farm*, 225 Wis. 2d at 321, 592 N.W.2d at 207. Second, the economic loss doctrine protects the parties' freedom to allocate economic risks that may arise out of their dealings as they see fit. And third, it encourages the purchaser of a product, who is the party in the best position to assess the resulting economic risk if the product purchased is not as represented, to allocate or insure against that risk. *See Wausau Tile*, 226 Wis. 2d at 247, 593 N.W.2d at 451 (citing *Daanen*, 216 Wis. 2d at 403, 573 N.W.2d at 846).

¶ 19.   In determining whether the economic loss doctrine should be applied, a court must examine the

nature of the damages complained of, the risk that caused them to arise and how that risk impacts on the policies underlying the doctrine. *See State Farm*, 225 Wis. 2d at 327, 592 N.W.2d at 210. Here, the court found that the damages awarded for the claims of negligent misrepresentation arose as a result of paying the Buyers' employees' wages while they worked on the software project.[8] They did not arise from damage to property other than the software itself or from personal injury. Their nature is that of a purely economic loss. Therefore, under the economic loss doctrine, they are consequential damages that resulted because the software did not function as the Buyers expected that it would. *See Wausau Tile*, 226 Wis. 2d at 246, 593 N.W.2d at 451.[9]

¶ 20. In regard to the risk that caused the damages, the circuit court found that MASCON made untrue factual statements by representing that the base program had been effectively utilized by other corporations and that it could be modified to meet the needs of the Buyers. The court also found that there were problems with the base program from the beginning.[10] The court then concluded that "this is a

---

[8] There is no dispute about the amount of damages awarded; rather, the dispute centers on whether even one dollar of damages could be awarded for negligent misrepresentation.

[9] In contract parlance, they would be consequential damages as well. *See Pierce v. International Ins. Co. of Illinois*, 671 A.2d 1361, 1367 (Del. 1996); *Reimer v. Badger Wholesale Co., Inc.*, 147 Wis. 2d 389, 395, 433 N.W.2d 592, 594 (Ct. App. 1988). And, as the parties agree, consequential contract damages are unavailable under the contracts between the Buyers, who are commercial purchasers of products, and MASCON.

[10] Examples of the problems found by the circuit court were: The Buyers paid to have a format that permitted twenty-two

negligent misrepresentation which goes outside of the contract. It's inducement to get into the contract, so there are consequential damages." These findings show that the court found the software did not meet the Buyers' expectations because MASCON negligently represented what the software could do. Therefore, the risk that caused the Buyers' losses was sales representations that negligently represented the product's capabilities.

¶ 21. The laws of contract and of warranty, as well as the Uniform Commercial Code, are designed to protect the expectancy interest of the parties to private, bargained-for commercial agreements. *See Sunnyslope,* 148 Wis. 2d at 920–21, 437 N.W.2d at 217. The Buyers' relationship with MASCON was a purely contractual relationship. The Buyers could have bargained for provisions that permitted recovery for consequential damages, if the software did not perform as MASCON represented it would. Furthermore, the Buyers could have assessed the risk that MASCON had puffed up the capabilities of its product by asking for references to past users of it and speaking with them. And, it was the Buyers who were going to suffer the loss if the software did not meet their expectations; therefore, they were in the best position to assess the magnitude of that risk and allocate it appropriately in their contracts with MASCON. Accordingly, we conclude that the economic loss doctrine applies to these purely economic losses and that claims for negligent representation are not available. Additionally, even though the circuit court found MASCON's negligent misrepresentations about the product induced the

characters, which was never provided, the accounting module never worked and "the cash is gibberish."

Buyers to enter into the contracts, that finding does not prevent the application of the economic loss doctrine because it is no different than most negligent misrepresentations that result in a contract where a buyer's expectations are not met.

¶ 22.   One Wisconsin case has held that a claim of misrepresentation prevented the application of the economic loss doctrine: *Douglas-Hanson Co., Inc. v. BF Goodrich Co.*, 229 Wis. 2d 132, 598 N.W.2d 262 (Ct. App. 1999), *aff'd by an equally divided court*, 2000 WI 22, 233 Wis. 2d 276, 607 N.W.2d 621. In *Douglas-Hanson*, we did permit a claim for damages for *intentional* misrepresentation that had caused the plaintiff to purchase equipment costing more than $1,000,000 in order to be able to enter into a service contract with the defendant. There, Goodrich intentionally misrepresented to Douglas-Hanson that it had a "commercially viable adhesive product" which it needed Douglas-Hanson's services in order to "cure" before Goodrich could sell it. Goodrich knew that Douglas-Hanson would be required to make a substantial capital investment in equipment in order to enter into the service contract with it. However, after Douglas-Hanson had purchased and installed the necessary equipment, Goodrich sent only a few rolls of adhesive for curing, then discontinued the product because it concluded it was not commercially viable.

¶ 23.   When Douglas-Hanson sued Goodrich, it did so under theories of breach of contract and intentional misrepresentation. At trial, Douglas-Hanson elected to pursue the intentional misrepresentation claim, wherein it was awarded $1,832,134 as compensatory damages and $1,000,000 as punitive damages. On appeal, Goodrich contended that all of the damages arose out of the failed contract to provide adhesive to

Douglas-Hanson for processing, and therefore, the tort claim was barred by the economic loss doctrine. We disagreed, concluding that an intentional misrepresentation claim could be maintained, in part because Douglas-Hanson could not assess Goodrich's representation that it had a commercially viable product because of the confidential nature Goodrich ascribed to information relating to the adhesive and in part because the misrepresentation was intentionally made with the knowledge of the extensive capital outlay it would cause Douglas-Hanson.

¶ 24.   In the case at hand, we conclude that *Douglas-Hanson* provides no basis for avoiding the economic loss doctrine. We note that *Douglas-Hanson* was not a buyer of a product, as Prent and GOEX are. Instead, Douglas-Hanson contracted to provide a service. No Wisconsin appellate case has addressed whether the economic loss doctrine applies to service contracts.[11] And, because it was not an issue in contention, we did not address that question in our decision in *Douglas-Hanson* either. Additionally, we were very careful to limit the available claim to *intentional* misrepresentation. We noted that intentionally lying to induce another to enter into a contract places the seller in the best position to assess the risk, not the buyer. *See id.* at 145, 598 N.W.2d at 269. Here, the circuit court found that the Buyers had not met their burdens of proof in regard to their claims for intentional misrepresentation. Therefore, *Douglas-Hanson* does not affect our conclusion that the economic loss doctrine bars recovery for negligent misrepresentation to a commercial

[11] *See* Timothy L. Bertschy, *Negligent Performance of Service Contracts and the Economic Loss Doctrine*, 17 J. Marshall L. Rev. 249 (1984).

buyer of a product, and accordingly, we reverse the award of damages that the circuit court made for those claims.

## CONCLUSION

¶ 25. Because we conclude that the findings and conclusions of the circuit court fully support the Buyers' breach of contract claims, we affirm those portions of the judgments. However, because we also conclude that the economic loss doctrine precludes the Buyers' claims for negligent misrepresentation, we reverse the circuit court as to those claims.

*By the Court.*—Judgments affirmed in part; reversed in part.