IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 28, 2004

## MARK JAY SCOTT McLEAN v. BOURGET'S BIKE WORKS, INC.

**Appeal from the Circuit Court for Davidson County**
**No. 01C-2676     Hamilton V. Gayden, Judge**

---

**No. M2003-01944-COA-R3-CV  - Filed October 7, 2005**

---

This appeal involves a dispute arising from the sale of a used motorcycle. After discovering that the motorcycle was not new, the purchaser filed suit and then settled with the dealer from whom he had purchased the motorcycle. Later, the purchaser filed suit against the motorcycle's manufacturer in the Circuit Court for Davidson County alleging that the motorcycle's aluminum frame was defective. The trial court granted the manufacturer's summary judgment motion and dismissed the purchaser's products liability and Tennessee Consumer Protection Act claims. The purchaser has appealed. We have determined that the manufacturer was entitled to a summary judgment on grounds other than those relied upon by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

G. Kline Preston, IV, Nashville, Tennessee, for the appellant, Mark Jay Scott McLean.

Jeffrey M. Beemer and Trajan H. Carney, IV, Nashville, Tennessee, for the appellee, Bourget's Bike Works, Inc.

### OPINION

### I.

In June 1999, Mark Jay Scott McLean[1] purchased a Python T6 motorcycle from Custom Cycle Works ("Custom Cycle"), in Nashville. The motorcycle had been manufactured by Bourget's Bike Works, Inc. ("Bourget's"), a manufacturer of custom and production motorcycles located in Phoenix, Arizona. Custom Cycle was not an authorized Bourget's dealer. However, Bobby Appleton, the owner of Custom Cycle, told Mr. McLean that the motorcycle was a 1999 model and

---

[1]Mr. McLean's complaint identifies him as "Mark Jay Scott McClain." However, his later papers identify him as "Mark J. Scott McLean" or "Scott McLean." The name "Mark McLean" appears of the bill of sale of the motorcycle involved in this case. For the purposes of this opinion, we will refer to the appellant as "Mr. McLean."

that it was "roadworthy" even though it had an aluminum frame and was not designed for long trips. Mr. McLean paid Custom Cycle $35,260 for the motorcycle based on his belief that it was new.

Mr. McLean began to experience mechanical problems with the motorcycle after he purchased it. He also discovered that the motorcycle was not new after he saw it on the cover of a "biker" magazine. When Mr. McLean contacted the prior owner, he learned that the motorcycle was actually a 1997 Python T6 and that Custom Cycle had purchased it used from a Bourget's dealer in Chattanooga.

In December 1999, Mr. McLean sued Custom Cycle and Mr. Appleton in the Circuit Court for Davidson County. Based on Mr. Appleton's assertion that the motorcycle was new, Mr. McLean sought to recover damages for breach of contract, intentional misrepresentation, and violation of the Tennessee Consumer Protection Act. According to Mr. McLean, in September 2000, while this suit was pending, the motorcycle's aluminum frame snapped in two places while it sat unattended. In June 2001, Mr. McLean settled his claims against Mr. Appleton and Custom Cycle when they offered to purchase the motorcycle back for $25,000. Mr. McLean turned the motorcycle over to Custom Cycle after he received his money.

On August 31, 2001, Mr. McLean filed suit against Bourget's in the Circuit Court for Davidson County. He asserted that Bourget's design was negligent because the "weight of the motorcycle is too great for the frame" and that Bourget's had violated the Tennessee Consumer Protection Act because the motorcycle was "not worthy of being called a motorcycle." Mr. McLean sought to recover damages "in excess of $15,000.00" for the "economic injuries" he sustained as a result of purchasing the motorcycle.

Bourget's responded to Mr. McLean's complaint with an answer and a multi-faceted motion for summary judgment. The summary judgment motion asserted (1) that Mr. McLean's claims were time-barred, (2) that Mr. McLean had committed spoliation of the evidence by selling the motorcycle back to Custom Cycle, (3) that Mr. McLean failed to state a products liability claim because he was seeking only economic damages, and (4) that Mr. McLean had failed to state a Tennessee Consumer Protection Act claim upon which relief could be granted. The trial court granted Bourget's motion on the first two grounds, as well as a third ground not asserted by Bourget's – that Mr. McLean had released Bourget's from liability based on the release he signed when he settled with Mr. Appleton and Custom Cycle. Mr. McLean has appealed.

## II.
### STANDARD OF REVIEW

The standards for reviewing summary judgments on appeal are well settled. Summary judgments are proper in virtually any civil case that can be resolved on the basis of legal issues alone. *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App. 2001). They are not, however, appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. Thus, a summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn

from the undisputed facts, support one conclusion – that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002); *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001).

The party seeking a summary judgment bears the burden of demonstrating that no genuine dispute of material fact exists and that it is entitled to a judgment as a matter of law. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *Shadrick v. Coker*, 963 S.W.2d 726, 731 (Tenn. 1998). To be entitled to a judgment as a matter of law, the moving party must either affirmatively negate an essential element of the non-moving party's claim or establish an affirmative defense that conclusively defeats the non-moving party's claim. *Byrd v. Hall*, 847 S.W.2d at 215 n.5; *Cherry v. Williams*, 36 S.W.3d 78, 82-83 (Tenn. Ct. App. 2000).

Once the moving party demonstrates that it has satisfied Tenn. R. Civ. P. 56's requirements, the non-moving party must demonstrate how these requirements have not been satisfied. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). Mere conclusory generalizations will not suffice. *Cawood v. Davis*, 680 S.W.2d 795, 796-97 (Tenn. Ct. App. 1984). The non-moving party must convince the trial court that there are sufficient factual disputes to warrant a trial (1) by pointing to evidence either overlooked or ignored by the moving party that creates a factual dispute, (2) by rehabilitating evidence challenged by the moving party, (3) by producing additional evidence that creates a material factual dispute, or (4) by submitting an affidavit in accordance with Tenn. R. Civ. P. 56.07 requesting additional time for discovery. *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd v. Hall*, 847 S.W.2d at 215 n.6. A non-moving party that fails to carry its burden faces summary dismissal of the challenged claim because, as our courts have repeatedly observed, the "failure of proof concerning an essential element of the cause of action necessarily renders all other facts immaterial." *Alexander v. Memphis Individual Practice Ass'n*, 870 S.W.2d 278, 280 (Tenn. 1993).

A summary judgment is not appropriate when a case's determinative facts are in dispute. However, for a question of fact to exist, reasonable minds must be able to differ over whether some alleged occurrence or event did or did not happen. *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995); *Harrison v. S. Ry. Co.*, 31 Tenn. App. 377, 387, 215 S.W.2d 31, 35 (1948). If reasonable minds could justifiably reach different conclusions based on the evidence at hand, then a genuine question of fact exists. *Louis Dreyfus Corp. v. Austin Co.*, 868 S.W.2d 649, 656 (Tenn. Ct. App. 1993). If, on the other hand, the evidence and the inferences reasonably drawn from the evidence would permit a reasonable person to reach only one conclusion, then there are no material factual disputes, and the question can be disposed of as a matter of law. *Godfrey v. Ruiz*, 90 S.W.3d at 695; *Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86, 91 (Tenn. 1999); *Beaudreau v. Gen. Motors Acceptance Corp.*, 118 S.W.3d 700, 703 (Tenn. Ct. App. 2003).

Summary judgments enjoy no presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003); *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 285 (Tenn. 2001). Accordingly, appellate courts must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997). We must consider the evidence in the light most favorable to the non-moving

party, and we must resolve all inferences in the non-moving party's favor. *Godfrey v. Ruiz*, 90 S.W.3d at 695; *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001). When reviewing the evidence, we must determine first whether factual disputes exist. If a factual dispute exists, we must then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall*, 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998).

## III.
### BOURGET'S STATUTE OF LIMITATIONS DEFENSE

Mr. McLean first argues that the trial court erred by dismissing both his products liability claim and his Tennessee Consumer Protection Act claim based on the statute of limitations. Specifically, he asserts that the trial court erred by concluding that he was on notice of the defective condition of the motorcycle when he filed his complaint against Custom Cycle and Mr. Appleton. We agree.

Products liability claims and claims under the Tennessee Consumer Protection Act both have one-year statutes of limitations. Products liability claims must be filed within one year from the date of the "personal injury, not the negligence or sale of a product." Tenn. Code Ann. § 28-3-104(b)(1) (2000). Similarly, claims under the Tennessee Consumer Protection Act must be filed within one year from the consumer's discovery of the unlawful act or practice. Tenn. Code Ann. § 47-18-110 (Supp. 2004).

Mr. McLean asserts that he did not discover the defect in the motorcycle's frame until the second week of September 2000 when the frame allegedly snapped in half under the weight of the motorcycle. He filed his complaint against Bourget's on August 31, 2001. Thus, for the purposes of Bourget's statute of limitations defense, the time began to run on Mr. McLean's claims – to the extent that he has viable claims[2] – in mid-September 2000.

Contrary to the trial court's conclusion, there is nothing in the record of the earlier suit against Custom Cycle and Mr. Appleton to indicate that Mr. McLean had been put on notice prior to September 2000 that the motorcycle's aluminum frame was defective. Mr. McLean's earlier lawsuit was based on the alleged misrepresentations regarding the motorcycle's age and prior ownership, as well as its mechanical problems. Mr. McLean made no mention in the prior suit that the aluminum frame was defective and could not support the weight of the motorcycle. Because Mr. McLean filed his lawsuit against Bourget's within one year from discovering the motorcycle's alleged defect, the trial court erred by dismissing his products liability and Tennessee Consumer Protection Act claims on the grounds that they were not timely filed.

---

[2]We will explain later in the opinion how Mr. McLean has failed to state a claim for relief based on either products liability or the Tennessee Consumer Protection Act.

# IV.
## THE SPOLIATION OF THE EVIDENCE DEFENSE

Mr. McLean also takes issue with the trial court's decision to summarily dismiss his complaint because he had sold the motorcycle back to Custom Cycle before he filed suit against Bourget's. He insists that the record does not substantiate a spoliation of the evidence claim because it contains no evidence that he sold the motorcycle back to Custom Cycle for the purpose of concealing or destroying the evidence. We agree.

The doctrine of spoliation of evidence permits a court to draw a negative inference against a party who has intentionally, and for an improper purpose, destroyed, mutilated, lost, altered, or concealed evidence. *Bronson v. Umphries*, 138 S.W.3d 844, 854 (Tenn. Ct. App. 2003); *Leatherwood v. Wadley*, 121 S.W.3d 682, 703 (Tenn. Ct. App. 2003); *Foley v. St. Thomas Hosp.*, 906 S.W.2d 448, 453-54 (Tenn. Ct. App. 1995). This inference is rebuttable and arises only when the spoliation occurs in circumstances indicating fraud and a desire to suppress the truth. It does not arise when the destruction was a matter of routine with no fraudulent intent.

As we understand Bourget's argument, it is asserting that Mr. McLean's sale of the motorcycle back to Custom Cycle has undermined its ability to defend against the products liability claim. Specifically, Bourget's asserts that the sale of the motorcycle deprives it of an opportunity to have its own expert examine the motorcycle to determine whether it was altered after it left the defendant's control.

The absence of the motorcycle may very well complicate both the prosecution and defense of the products liability claim, but it does not completely prevent litigating the claim. Any difficulty of this sort does not rise to the level of spoliation without evidence that the party responsible for the evidence intentionally destroyed it or put it beyond the reach of the parties or the court to suppress the truth. Bourget's offered no evidence that Mr. McLean sold the motorcycle back to Custom Cycle in order to place it beyond Bourget's reach. Accordingly, the trial court erred by drawing the inference at the summary judgment stage that the motorcycle's frame, had it been available, would have provided evidence favorable to Bourget's claim that the frame had been altered after the motorcycle left the manufacturer's control.

# V.
## THE RELEASE SIGNED IN THE EARLIER LITIGATION

As a final matter, Mr. McLean argues that the trial court erred by concluding that the release he signed in the earlier litigation with Custom Cycle was broad enough to cover his claims against Bourget's. We have determined that the trial court erred both procedurally and substantively when it granted the summary judgment on this ground.

While trial courts may grant summary judgments to non-moving parties, they must exercise this power with meticulous care. *Thomas v. Transp. Ins. Co.*, 532 S.W.2d 263, 266 (Tenn. 1976). Such decisions should be made only when the trial court is satisfied that the party opposing the

summary judgment has been given notice and has been given a reasonable opportunity to respond to all the issues being considered by the court. *March Group, Inc. v. Bellar*, 908 S.W.2d 956, 959 (Tenn. Ct. App. 1995).[3]  This record contains no indication that Mr. McLean was on notice that the trial court was considering granting a summary judgment on a ground not contained in Bourget's motion.  Accordingly, the summary judgment is procedurally defective because Mr. McLean was not given a reasonable opportunity to demonstrate why the release did not provide a basis for a summary judgment.

In addition, the trial court misread the terms of the release between Mr. McLean and Custom Cycle.  The release defined the parties to be released as follows "all persons or entities which may be liable through" Mr. Appleton and Custom Cycle.  If Bourget's is liable to Mr. McLean, it is not "through" Custom Cycle.  Custom Cycle was never an authorized agent or dealer of Bourget's and the record contains no evidence that the two entities were associated in any other way.  There was no vertical privity between Custom Cycle and Bourget's when Custom Cycle signed the release.  Because the release of liability does not concern Bourget's in any way, the trial court erred by granting summary judgment on that ground.

## VI.
### THE OTHER GROUNDS FOR BOURGET'S' SUMMARY JUDGMENT MOTION

Even though we have determined that the trial court's reasons for granting Bourget's motion for summary judgment were flawed, we have determined that the trial court reached the correct result because the remaining two grounds in Bourget's' motion were well-taken.[4]

### A.
### Mr. McLean's Products Liability Claim

Mr. McLean sought only damages for economic loss when he sued Bourget's.  Accordingly, Bourget's requested a summary dismissal of Mr. McLean's products liability claim[5] on the ground that purely economic damages were not recoverable in a products liability action.  This defense was well-taken.  Mr. McLean's products liability claim founders on the rocks of the economic loss rule.

The economic loss rule is a judicially created principle that requires parties to live by their contracts rather than to pursue tort actions for purely economic losses arising out of the contract.

---

[3]We noted favorably the United States Court of Appeals for the Sixth Circuit's opinion stating that non-moving parties should be provided at least ten days notice before entering a summary judgment on grounds not included in the summary judgment motion. *March Group, Inc. v. Bellar*, 908 S.W.2d at 959.

[4]The Court of Appeals may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result. *Continental Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn. 1986); *Arnold v. City of Chattanooga*, 19 S.W.3d 779, 789 (Tenn. Ct. App. 1999); *Allen v. National Bank of Newport*, 839 S.W.2d 763, 765 (Tenn. Ct. App. 1992); *Clark v. Metropolitan Gov't*, 827 S.W.2d 312, 317 (Tenn. Ct. App. 1991).

[5]Mr. McLean's claim regarding the negligent design of the motorcycle's frame is by definition a products liability claim.  Tenn. Code Ann. § 29-28-102(6) (2000).

The rule comes into play when the purchaser of a product sustains economic loss without personal injury or damage to property other than the product itself.[6]  In that circumstance, the purchaser must seek a remedy in contract, not in tort.[7]  *Ritter v. Custom Chemicides, Inc.*, 912 S.W.2d 128, 133 (Tenn. 1995); *Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 171 (Tenn. Ct. App. 2001).  Thus, when a purchaser's expectations in a sale are frustrated because a product does not work properly, the purchaser's remedies are limited to those prescribed by the law of contract.  *See, e.g., Palmetto Linen Servs., Inc. v. U.N.X., Inc.*, 205 F.3d 126, 128 (4th Cir. 2000); *Neibarger v. Universal Coops., Inc.*, 486 N.W.2d 612, 615 (Mich. 1992).

Economic losses can take two forms – direct economic losses and consequential economic losses attributable to the product.  Restatement (Third) of Torts: Products Liability § 21 cmt. d, at 294-95; 3 J. D. Lee & Barry H. Lindahl, *Modern Tort Law: Liability & Litigation* § 27:21 (rev. ed. 2002).  Direct economic losses relate to the product itself and include costs of repairing or replacing the product or the diminution in the product's value because it is of an inferior quality or does not work for the general purposes for which it was manufactured and sold.  *See, e.g., Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 449 (Ill. 1982); *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 465 (Tenn. Ct. App. 2003); *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 241-42 (Wis. 2004).  Consequential economic losses include all other economic losses attributable to the product itself such as the loss of profits resulting from an inability to use the defective product.  *See, e.g., Bank of America v. Musselman*, 240 F. Supp. 2d 547, 554 (E.D. Va. 2003); *Casa Clara Condo. Ass'n v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244, 1246 (Fla. 1993); *Prent Corp. v. Martek Holdings, Inc.*, 618 N.W.2d 201, 206 (Wis. Ct. App. 2000).

The economic loss rule applies to consumer transactions.  *Tennessee Farmers Mut. Ins. Co. v. Ford Motor Co.*, No. W2001-00046-COA-R3-CV, 2002 WL 1332492, at *4 (Tenn. Ct. App. June 17, 2002) (No Tenn. R. App. P. 11 application filed).  Here, Mr. McLean, according to the plain language of his complaint, is seeking to recover damages only for economic loss – chiefly the diminished value of the motorcycle because of its allegedly defective aluminum frame.  He has not alleged that the failure of the frame caused personal injury or damaged any property other than the motorcycle itself.  In the absence of any allegations or evidence of personal injury or damage to property other than the motorcycle, Bourget's was entitled as a matter of law to a judgment dismissing Mr. McLean's products liability claim.

---

[6]Tenn. Code Ann. § 29-28-102(6) (2000) defines a "product liability action" as "all actions brought for or on account of personal injury, death, or property damage . . . ."

[7]The Restatement explains limiting claims for purely economic loss to contract remedies by pointing out that "products liability law lies at the boundary between tort and contract.  Some categories of loss, including those often referred to as 'pure economic loss,' are more appropriately assigned to contract law and the remedies set forth in Articles 2 and 2A of the Uniform Commercial Code.  When the Code governs a claim, its provisions regarding such issues as statutes of limitation, privity, notice of claim, and disclaimer ordinarily govern the litigation."  Restatement (Third) of Torts: Products Liability § 21 cmt. a, at 293 (1998).

**B.**
**Mr. McLean's Tennessee Consumer Protection Act Claim**

Mr. McLean also alleged that Bourget's violated the Tennessee Consumer Protection Act simply by placing its motorcycle into the stream of commerce. He insists that Bourget's committed an unfair or deceptive act or practice by calling its 1997 Python T6 a motorcycle because it was "not worthy of being called a motorcycle." Despite its rhetorical intensity, we find little merit in this claim.

The Tennessee Consumer Protection Act was enacted to "protect consumers and legitimate enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in part or wholly within this state . . . ." Tenn. Code Ann. § 47-18-102(2) (2001). Liability under the Act is premised on the commission of an unfair or deceptive act. *McDonald's Corp. v. Shop at Home, Inc.*, 82 F. Supp. 2d 801, 817 (M.D. Tenn. 2000). Thus, a plaintiff will not succeed with a claim under the Act without an allegation and proof that the defendant committed an unfair or deceptive act. *Hamer v. Harris*, No. M2002-00220-COA-R3-CV, 2002 WL 31469213, at *1-2 (Tenn. Ct. App. Nov. 6, 2002) *perm. app denied* (Tenn. Feb. 18, 2003).

Claims under the Tennessee Consumer Protection Act must be pleaded with the same particularity that Tenn. R. Civ. P. 9.02 requires of common-law fraud claims. *Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 273, 275 (Tenn. Ct. App. 1999); *Humphries v. West End Terrace, Inc.*, 795 S.W.2d 128, 131-32 (Tenn. Ct. App. 1990). Mr. McLean's complaint falls far short of this standard. Neither his complaint nor his response to Bourget's summary judgment motion contain any specific factual allegation or assertion that Bourget's made any representations to him, either directly or through advertising, regarding the Python T6. All the representations regarding the motorcycle were made by Mr. Appleton who, though an agent of Custom Cycle, was not an agent of Bourget's. In the absence of specific allegations that Bourget's had committed an unfair or deceptive practice, Bourget's was entitled to a dismissal of Mr. McLean's Tennessee Consumer Protection Act claim as a matter of law.

**VII.**

We affirm the summary judgment dismissing Mr. McLean's complaint against Bourget's and remand the case to the trial court for any further proceedings consistent with this opinion that may be required. We tax the costs of this appeal to Mark Jay Scott McLean and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.