COURT OF APPEALS
DECISION
DATED AND FILED

September 29, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP1210**

STATE OF WISCONSIN

Cir. Ct. No.  **2019SC55**

IN COURT OF APPEALS
DISTRICT III

BLENKER BUILDING SYSTEMS, INC.,

   PLAINTIFF-APPELLANT,

  V.

JAMES SYDOW, D/B/A TOWN & COUNTRY BUILDERS,

   DEFENDANT-RESPONDENT.

APPEAL from a judgment of the circuit court for Oneida County: PATRICK F. O'MELIA, Judge. *Affirmed.*

¶1     STARK, P.J.[1]  Blenker Building Systems, Inc., (Blenker) appeals from a small claims judgment entered in favor of James Sydow, doing business as Town & Country Builders (Town & Country).  Blenker subcontracted with

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2017-18).  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Town & Country to work on a construction project, but the parties mutually terminated the contract before Town & Country could complete the work. Blenker argues the circuit court erroneously interpreted provisions in the parties' contract, thereby improperly dismissing Blenker's claim against Town & Country and entering a money judgment against Blenker on Town & Country's counterclaim. We affirm.

## BACKGROUND

¶2      The facts are undisputed. On May 22, 2018, the parties entered into a written contract for Town & Country to install Blenker's manufactured framing package at a construction site for a new Pizza Ranch restaurant in Rhinelander. Town & Country began the project one week later, but on June 5, a portion of the roof truss system collapsed, seriously injuring Sydow.

¶3      That same evening, Blenker's project manager, Sean Dumais, visited Sydow in the hospital. The two discussed the options for Town & Country to complete the project. Sydow had concerns about completing the project if he could not return to the site, which, given his injuries, he did not expect to occur. Although he had three to four other people working with him on the project, Sydow did not believe the project could be completed without his supervision. Dumais ultimately told Sydow, "[D]on't worry about it," and they mutually agreed to terminate the contract.

¶4      Less than two days later, Blenker contracted with a different subcontractor to finish the project. In doing so, Blenker incurred expenses totaling $16,632.25 in excess of the Town & Country contract price. Town & Country later submitted a bill of $8645 to Blenker for the services performed before Sydow's injury. By that time, Dumais had left Blenker, and its office assistant

asked Sydow for a further breakdown of the work he performed. Sydow provided the requested work itemization.

¶5 On January 31, 2019, Blenker filed a small claims complaint alleging Town & Country had breached the parties' contract, and it sought $10,000 as compensation for the expenses it incurred due to the alleged breach. Prior to filing its small claims suit, Blenker never gave notice to Town & Country that Blenker believed Town & Country had breached the contract, nor did Blenker seek reimbursement from Town & Country for the extra cost Blenker incurred by hiring the subsequent subcontractor.

¶6 Town & Country counterclaimed in the amount of $8645 for the work it completed prior to Sydow's injury. Following a bench trial, the circuit court concluded the parties mutually terminated the contract and that it was terminated through no fault of Town & Country. The court thus denied Blenker's claim and awarded Town & Country the entirety of its counterclaim. Blenker now appeals.

## DISCUSSION

¶7 Blenker argues the circuit court misinterpreted two provisions of the parties' contract. The first provision is § 7.1.1, "TERMINATION BY THE SUBCONTRACTOR," which, in relevant part, provides:

> The Subcontractor may terminate this Agreement for the same reasons and under the same circumstances and procedures with respect to Blenker as Blenker may terminate with respect to the Prime Contractor under the Prime Contractor-Blenker Agreement, or for nonpayment of amounts due under this agreement for 60 days or longer. In the event of such termination by the Subcontractor *for any reason which is not the fault of the Subcontractor*, Sub-subcontractors or their agents or employees or other persons performing portions of the Work under contract

3

> with the Subcontractor, the *Subcontractor shall be entitled to recover from Blenker payment for Work executed* and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery.

(Emphases added.)

¶8 The second provision Blenker argues the circuit court misinterpreted is § 3.4, "SUBCONTRACTOR DEFAULT AND BLENKER'S REMEDIES." As relevant here, § 3.4 provides:

> If the Subcontractor (a) at any time refuses or for any reason does not supply sufficient properly skilled workers, equipment and/or materials and competent supervisions, commensurate with the usual requirements for the Work, as necessary to maintain the project schedule, or as otherwise required by Blenker, Owner or Prime Contractor; or (b) has otherwise failed to comply with any of the terms and conditions of this Agreement, then Subcontractor shall be deemed to be in default under the terms and conditions of this Agreement.... Without limitation on other remedies afforded Blenker under this Subcontract or by any applicable law, Subcontractor agrees to pay all damages of any nature whatsoever resulting from or caused by any failure of Subcontractor to adhere to the terms and conditions of this Subcontract.

¶9 This appeal presents mixed questions of law and fact. We must accept the circuit court's findings of fact unless they are clearly erroneous. *See* WIS. STAT. § 805.17(2); *Prent Corp. v. Martek Holdings, Inc.*, 2000 WI App 194, ¶9, 238 Wis. 2d 777, 618 N.W.2d 201. Interpretation of a contract, including whether the facts constitute a party's breach under a contract, presents a question of law that this court reviews independent of the circuit court. *Prent Corp.*, 238 Wis. 2d 777, ¶9; *see also Estate of Kriefall v. Sizzler USA Franchise, Inc.*, 2012 WI 70, ¶14, 342 Wis. 2d 29, 816 N.W.2d 853. In cases such as this one where the legal issues are so intertwined with the facts, the circuit court's decision, while not

4

controlling, is given weight. *See* ***Wassenaar v. Panos***, 111 Wis. 2d 518, 525, 331 N.W.2d 357 (1983).

¶10 Blenker first argues that the circuit court erred in interpreting the clause "not the fault of the Subcontractor" in § 7.1.1. Blenker contends that although the court found Sydow was not at fault for his injury, the court erred by failing to find Sydow's business, Town & Country, at fault under the meaning of § 7.1.1 because it did not finish the work it was contractually obligated to complete.

¶11 Blenker asserts Town & Country was ultimately at fault for terminating the contract for two main reasons, both of which we reject. First, Blenker argues that "worksite injuries are foreseeable and specifically addressed" by different articles in the contract and, therefore, § 7.1.1 should not be interpreted to allow Town & Country to terminate the contract because of a workplace injury. Blenker's argument in this regard, however, erroneously implies that Town & Country was the only party that sought termination and erroneously identifies Sydow's injury as the reason for termination. This argument is misplaced because Blenker ignores that both parties agreed to terminate the contract and that no fault was assigned to either party in doing so.

¶12 Critically, the circuit court found Dumais, who undisputedly possessed the authority to contract on behalf of Blenker as its project manager, and Sydow agreed to terminate the contract the evening of Sydow's injury because "it was in the best interest of the project to find somebody else to complete the project." Their agreement to terminate the contract relieved Town & Country of any further construction obligations. Blenker's failure to appreciate that it agreed with Sydow to terminate the contract without faulting Town & Country in doing

so is fatal to Blenker's argument here and undermines most, if not all, of its remaining arguments.

¶13　Moreover, even assuming Blenker is correct that worksite injuries were foreseeable and the contract specifically addressed those circumstances, nothing in the contract prohibited the parties from mutually deciding to terminate the contract.　Indeed, Blenker does not argue that the contract prohibited such a termination by oral agreement.

¶14　Second, Blenker contends Town & Country was at fault in terminating the contract because it failed to meet its obligations outlined in two provisions of the contract requiring it to maintain the workforce and supervision necessary to timely complete the project.[2]　As we explain further below, however, the circuit court found no facts establishing that Town & Country breached its duties before the contract was mutually terminated.

¶15　For the foregoing reasons, the circuit court properly interpreted § 7.1.1 and concluded the contract's termination was not the fault of Town & Country.　Because Blenker does not dispute that the value of the work

---

[2] Specifically, § 8.4 provides that Town & Country

> agrees to provide the materials, equipment, workers and supervision necessary to begin and complete the Work at the Project site promptly upon Blenker's direction and to maintain sufficient forces, supervision, equipment and materials at all times necessary for Work to conform to the written approved progress schedule, which may be modified from time to time.

Similarly, § 4.1.2 states: "The Subcontractor agrees to maintain an adequate force of experienced workers and the necessary materials, supplies, and equipment to meet the requirements of Blenker, the Prime Contractor, other subcontractors, and the Owner in order to maintain construction progress schedules established by the Prime Contractor and Blenker."

Town & Country completed prior to the contract termination was $8645, the court properly awarded that amount to Town & Country on its counterclaim.

¶16     Next, Blenker argues the circuit court erred because it "did not adequately address Blenker's default claim against Town & Country." Blenker asserts Town & Country defaulted under § 3.4 of the contract because after Sydow's injury, it failed to provide an adequate workforce and competent supervision. In Blenker's view, because Town & Country was in breach of the contract, Blenker is entitled to recover the expenses it incurred to complete the project that were in excess of the amount it contracted to pay Town & Country, even if § 7.1.1 entitles Town & Country to payment for work completed.

¶17     We disagree that Town & Country defaulted under, or otherwise breached the contract. Section 3.4 plainly applies to circumstances in which Town & Country, for whatever reason, failed to do the agreed-upon work while the contract was still in effect. That is not what occurred here. There are no facts indicating Town & Country failed to do work at Blenker's request. Instead, the parties agreed that after Sydow's injury, it was in the project's best interest that the agreement with Town & Country be terminated and that Blenker hire a new subcontractor. Again, once the parties mutually terminated the contract, Town & Country had no further obligation to work on the project. Town & Country therefore never failed to perform its obligations "in connection with the Work performed prior to the termination" under § 3.4, and, thus, did not default under the contract.

> *By the Court.*—Judgment affirmed.

> This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.