FAIRBANKS MORSE & COMPANY et al., Petitioners, v. DISTRICT COURT OF PALO ALTO COUNTY et al., Respondents.

No. 40924.

704

FEBRUARY 14, 1933.

A. J. Burt and Clark, Byers, Hutchinson & Garber, for petitioners.

James W. Fay, for respondent.

DONEGAN, J.—In the original action one Bradley, as plaintiff, brought suit in the district court of Palo Alto county against Fairbanks Morse & Company, Municipal Utilities Company and Emmetsburg Municipal Electric Light & Power Company, as co-defendants, claiming damages which he alleged he had sustained by reason of the breach of a contract of employment. The defendants answered separately. Later, the plaintiff filed a petition for the production of books and papers, to which the defendants filed a resistance. Upon hearing the trial court entered a rule directing the production of books and papers as specified therein. The defendants thereupon

brought this original proceeding in this court on certiorari to test the validity of said rule.

No argument in behalf of the respondent has been filed in this court.

The matter of the production of books and papers by rule of court is statutory in this state. Code Sections 11316 and 11317 are as follows:

"11316. The district or superior court may in its discretion, by rule, require the production of any papers or books which are material to the just determination of any cause pending before it, for the purpose of being inspected and copied by or for the party thus calling for them.

11317. The petition for that purpose shall be verified, and must state the facts expected to be proved by such books or papers, and that, as the petitioner believes, such books and papers are under the control of the party against whom the rule is sought, and must show wherein they are material. The rule shall thereupon be granted to produce the books and papers, or show cause to the contrary, if the court deems such rule expedient and proper."

The writ of certiorari issued in this case is also governed by the provisions of a statute, as follows:

"12456. The writ of certiorari may be granted when authorized by law, and in all cases where an inferior tribunal, board, or officer exercising judicial functions is alleged to have exceeded his proper jurisdiction, or is otherwise acting illegally, and there is no other plain, speedy, and adequate remedy."

The petitioners here attack the rule issued in the original action on the ground that the trial court was without jurisdiction and acted illegally.

Petitioners assign thirteen errors relied upon for reversal. Of these, the first two attack the jurisdiction of the trial court generally on the ground that the petition for the production of books and papers did not comply with the requirements of the statute. The remaining eleven errors relied upon for reversal are directed to different parts of the rule, and allege that the trial court erred and acted illegally in requiring the production of the books and papers referred to in these different divisions.

I. We shall first consider the claim of want of jurisdiction,

based upon the alleged insufficiency of the petition for the production of books and papers.

An examination of the petition for the production of books and papers shows it to be a very voluminous document separated into five divisions. It is true, as petitioners herein allege, that the statements of the petition are broad and general; that some of these statements have the appearance of legal conclusions; and that the petition does not state in detail what particular facts will be proved by certain specified books or papers. However, this petition does contain statements that books and papers asked for by the rule "are material to the just determination" of the cause. It states "the facts expected to be proved by such books or papers," and it also contains statements showing "wherein they [such facts] are material." The statutes governing the production of books and papers do not specifically require the particularity of statement insisted upon by the petitioners. In Grand Lodge A. O. U. W. v. District Court, 150 Iowa 398, reading at 402, we said:

"It is true the petition does not go into details of the facts constituting proof of the death of Cunningham, but we do not think that was necessary. The ultimate fact must be proved before a recovery could be had, and any papers or books which tended to prove such fact could be called for. It is not to be presumed that the petitioner is advised of the details of the evidence that may finally establish a given fact, and we think no more specific statement thereof should be required in this case. From the very nature of the case it would be impossible for the plaintiff to designate with particularity the letters or records throwing light upon the disappearance and death of Cunningham. We are of the opinion, therefore, that the petition was as specific in that respect as should be required under the statute."

In Iowa Loan & Trust Co. v. District Court, 149 Iowa 66, reading at 71, we said:

"The petition alleged that the books were material, and alleged what they would prove. We think the question of their materiality was therefore sufficiently pleaded."

See, also, Iowa Farm Credit Corporation v. Hutchison, 207 Iowa 453, 458.

In view of the broad language of these statutes and of our

previous decisions construing them, we think the statements of the petition under consideration in this case are sufficient to meet the statutory requirements.

II.   A more serious problem arises when we come to the consideration of the claim that the trial court acted illegally in entering its order for the production of books and papers.  Under the wording of the statute (Section 11316) "The district * * * court may in its discretion, by rule, require the production of any papers or books *which are material* to the just determination of any cause pending before it."  (Italics are ours.)

In Davis v. District Court, 195 Iowa 688, this court said:

"It is discretionary with the court whether a rule shall be entered, and, so far as the court confines its ruling within the discretion allowed by statute, or it is merely erroneous, it is not subject to review in this court by an original proceeding in certiorari. * * * [citing cases.]  If, however, the order goes beyond the discretion and authority of the court, and thereby becomes illegal, or the court exceeds its jurisdiction, it is subject to review by certiorari."  (Citing cases.)

It is apparent, therefore, that, while a petition may sufficiently conform to the statute to give the court jurisdiction to order production of some of the books or papers for which the rule is asked, it does not follow that the court has jurisdiction to require the production of everything asked in the petition.  If the petition asks for the production of matters which are not material, and the court grants the order for their production, the court exceeds its jurisdiction and acts illegally as to such immaterial matters, even though the petition might legally be granted as to other material matters which it asked to be produced.  As stated in 18 C. J. 1119:

"The statutes generally are designed to provide a method for the production or inspection of books or papers by proceedings at law in those cases where their production and inspection might formerly have been compelled by the ordinary rules of proceedings in chancery.  Hence a party cannot obtain a roving commission for the inspection or production of books or papers in order that he may ransack them for evidence to make out his case."

In Grand Lodge A. O. U. W. v. District Court, supra, we said:

"But the petition evidently asked too much, and the order of

the court granted too much. As we have already said, the plaintiff was only entitled to such books and papers as would tend to show the death of her husband, while the petition and the order would compel the defendant order to disclose its entire record evidence in defense of the action, if it had any, and this without reference to whether it was material or pertinent to the plaintiff's action or not."

In Davis v. District Court, supra, we further said:

"The principal challenge of plaintiff herein to the sufficiency of the petition is that the books and papers desired are not sufficiently identified, nor their materiality shown. Both of these matters are essential, and a rule should not issue unless the statute is complied with. The purpose of the statute is to provide a convenient and summary method of obtaining material and competent documentary evidence in the custody or under the control of an adversary. It was not designed nor intended to be made an instrument for compelling such adversary to disclose his defense, nor to impart information to be made use of by the petitioner for the discovery of other facts that may, perchance, aid his cause of action."

Again, in National Clay Products Co. v. District Court, 214 Iowa 960, reading at 969, we stated:

"A party is entitled only to seek evidence which is material to his own case, not to pry into or to discover the case of his adversary. He is not entitled to a roving commission to ransack his adversary's books, papers, or evidence, or to embark upon a mere fishing expedition or exploratory enterprise. * * * [Citing cases.] The order assailed, however, granted the plaintiffs that very privilege. It makes no provision for sealing immaterial parts of the books and papers of F. E. Keeler or for their inspection under the supervision of the court or a referee. The order ignores the necessities and convenience of the private business of F. E. Keeler in matters in which the plaintiffs may have no interest. As to F. E. Keeler, the order may be oppressive, and it exceeds the proper discretion of the court."

In order to determine what matters were material, it is necessary again to refer briefly to the plaintiff's petition in the original action.

The action is one in damages for the breach of a contract of employment. The petition states that the defendant, Fairbanks Morse

& Company, is a corporation organized under the laws of the state of Illinois, with its office and principal place of business in the City of Chicago; that the defendants Municipal Utilities Company and Emmetsburg Municipal Electric Light & Power Company are both corporations organized under the laws of the state of Iowa, the office and principal place of business of the former of these corporations being at Des Moines, Iowa, and of the latter at Emmetsburg, Iowa; that, in furtherance of a scheme of the defendant Fairbanks Morse & Company for the sale of Diesel engines and other equipment, said defendant Fairbanks Morse & Company offered to erect an electric light and power plant in the city of Emmetsburg, Iowa; .that, in furtherance of said scheme, said defendant caused the defendants Municipal Utilities Company and Emmetsburg Municipal Electric Light and Power Company to be incorporated; that the said franchise in the city of Emmetsburg was granted in the name of the defendant Municipal Utilities Company; that the defendants Municipal Utilities Company and Emmetsburg Municipal Electric Light & Power Company are agents and subsidiaries of the defendant Fairbanks Morse & Company; that, during all of the times material to this cause of action, they have acted in behalf of and as agents of said parent corporation; and that all of the defendants acted jointly in the operation and management of said electric light and power plant; and that the same is a joint venture of each and all of them.

The petition further alleges that, during the summer of 1928, plaintiff was offered a position as manager of said electric light and power plant, then in process of erection; that the period of employment was to be not less than eight years, and his compensation was to be $2,400 per annum, said amount to be increased as the development of the plant took place; that the contract of employment was partly oral and partly in writing, a copy of the written portion being attached to and made a part of the petition and marked Exhibit A; that said contract was made on behalf of the defendant Emmetsburg Municipal Electric Light & Power Company, and with full knowledge thereof they accepted the services rendered by plaintiff; that the plaintiff will prove the making of said contract by the oral testimony of R. C. DeCou and H. L. Cory, employees of and agents of all of the defendants; that plaintiff accepted said contract and entered the employ of the defendant corporations, doing everything of him required or requested by said

defendants; that, during the month of May, 1930, defendants, without just cause, cancelled their contract of employment with plaintiff, and refused to continue him in their employ or to carry out the terms and conditions of said contract; that plaintiff has received no compensation thereunder since May, 1930; that he has sought employment elsewhere but has been unable to procure same; and that, by reason of the unlawful breach of said contract by defendant corporations, plaintiff has been damaged in the sum of $10,000.

Exhibit A, attached to plaintiff's petition, is a letter, and is as follows:

"Municipal Utilities Company
"Engineering-Construction
"526 Liberty Bldg.

"H. L. Cory,
    "Vice Pres. & Gen'l Mgr.

"Des Moines, Iowa,
"August 16th, 1928.

"Mr. B. F. Bradly,
    "Emmetsburg, Iowa.
"Dear Mr. Bradly:

"In accordance with our recent conversation, we wish to advise that if you should leave your present position, the position of manager of the new Emmetsburg Light Plant will be held open for your acceptance.

"The salary connected with this position would be approximately $2,500 a year at the start with opportunity for increase as the business develops.

"If you should give up your present position prior to the time the new plant is ready for operation, it will be possible for you to make some connection with this new Company during the interim at approximately the same compensation.

"With best personal regards from the writer, we are

"Yours very truly,
"Municipal Utilities Company,
"By H. L. Cory,

"H. L. Cory-FS            "President & Gen. Mgr."

The plaintiff seeks to hold the three defendant corporations liable in damages for the breach of the contract of employment which he claims to have made. There are some broad statements in

the petition which might be interpreted as meaning that this contract of employment was entered into with the defendant Fairbanks Morse & Company, but these are so general and indefinite that they amount to no more than statements of legal conclusions. The letter, Exhibit A, shows an offer on the part of the defendant Municipal Utilities Company to employ plaintiff. This letter contains the only specific statement of the terms of the contract which plaintiff claims to have entered into. As far as the allegations of the petition are concerned, therefore, there is no allegation of the terms of any contract entered into directly with the plaintiff by any of the defendants except the Municipal Utilities Company.

Apparently the petition seeks to hold the other defendants to liability under the contract on three theories: first, that Municipal Utilities Company and Emmetsburg Municipal Electric Light & Power Company are subsidiaries of the defendant Fairbanks Morse & Company; second, that in all matters connected with this action they are acting and have acted as agents of said defendant Fairbanks Morse & Company; third, that all three defendants were engaged jointly in obtaining the franchise for and in the erection and operation of said electric light and power plant.

The term "subsidiary corporation" is defined as "one in which another corporation owns at least a majority of the shares, and thus has the control." 60 C. J., 976. Plaintiff alleges that the three defendants are separate corporations. They are necessarily, therefore, separate and independent legal entities. The fact that one corporation owns a majority of the stock and thus controls another corporation does not make it liable for the contracts of the corporation of whose stock it owns a majority. Every corporation, as such, has a right to make and is bound by such contracts as are within its corporate capacity. It must necessarily act by and through its own board of directors and officers. The fact, if it be a fact, that the defendant Fairbanks Morse & Company owns a majority of the stock in the other two defendant corporations does not, in and of itself, make any one of the defendant corporations a party to or liable on contracts made by any other one of these corporations.

Would the fact that the defendant Municipal Utilities Company was the agent of the defendant Emmetsburg Municipal Electric Light & Power Company, or that either or both of them were acting as agent for the defendant Fairbanks Morse & Company, make such defendants Fairbanks Morse & Company and Emmetsburg Municipal

Electric Light & Power Company liable upon the contract of employment sued upon in this case? This would, of course, depend upon whether such agency actually existed and whether the contract was within the scope of the agent's authority. There is no sufficient allegation in the petition that any of the defendants except the defendant Municipal Utilities Company entered into this contract of employment with the plaintiff directly. There is no statement in the petition itself, and there is nothing in the letter, Exhibit A, set out and made a part of the petition, alleging that the contract of employment, at the time it was made, was known or understood by the plaintiff as being made between defendant Municipal Utilities Company, as agent for either or both of the other two defendant corporations. There is no question here of any conduct on the part of the defendants Fairbanks Morse & Company or Emmetsburg Municipal Electric Light & Power Company which would estop them from denying such relationship. If, therefore, the plaintiff can hold the defendants Fairbanks Morse & Company and Emmetsburg Municipal Electric Light & Power Company as principals, represented by the defendant Municipal Utilities Company as agent, it must be because there was the actual relation of agent and principal existing between the said Municipal Utilities Company and the other two defendant corporations. If the defendants Fairbanks Morse & Company and Emmetsburg Municipal Electric Light & Power Company are liable on the contract of employment in this case, it must be because the relation of principal and agent actually existed at the time this contract was made. It is true that this relationship need not necessarily be proved by a written or even by an express contract; but *it is necessary* to the establishment of such relation to prove an understanding or agreement which is sufficient to constitute such relationship between the principal and agent.

"It is a fundamental principle that the relation of agency can exist only by the will of the principal and with the consent of the agent. In other words, as agency ordinarily results from one form of contract, there must, in general, be a contract of employment, express or implied, which must possess the essential elements of every contract." 2 C. J. 432.

If, therefore, the order for production of books and papers in this case is to stand on the theory of agency, the documentary evidence which the rule directs be produced must be material and such

as tends to prove the existence of agency: that is, a contract of agency, express or implied, between Fairbanks Morse & Company, as principal, and either or both of the other two defendant corporations, as agent; or between the Emmetsburg Municipal Electric Light & Power Company, as principal, and the defendant Municipal Utilities Company, as agent.

The remaining ground by which plaintiff in his petition seeks to impose liability on all of the defendant corporations is that they are engaged in a joint venture. Presumably, by a joint venture is meant the same relation that is ordinarily referred to as a joint adventure.

"A joint adventure has been aptly defined as a 'special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation.' " 33 C. J. 841.

"The law in regard to joint adventure is of comparatively recent origin. It is analogous to the law of partnership in many respects but is not identical with it." Tusant & Son Company v. Weitz Sons, 195 Iowa 1386 (citing cases.)

"A joint adventure can exist only by the voluntary agreement of the parties to it. The joint ownership of property does not create it; nor can it arise by mere operation of law. * * *" 33 C. J. 847.

"The usual requisites as to form and validity apply to a contract of this character. To constitute such a contract no particular form of expression or formality of execution is necessary. It need not be expressed but may be implied in whole or in part from the conduct of the parties." 33 C. J. 847.

In view of the foregoing, it is quite apparent that in order to establish a joint venture it is necessary to establish an understanding or agreement, express or implied,—that is, a contract by which such joint adventure is entered into by two or more of the defendants; and, as any member of a joint adventure can bind the adventurer by such contracts only as are reasonably necessary to carry on the business in which the adventurers are engaged, it is necessary, further, to establish that the contract of employment claimed by the plaintiff was within the scope of the joint adventure. 33 C. J. 871. The documentary evidence which the plaintiff would have the right to have produced to prove this portion of his petition would

be, therefore, such only as is material and tends to prove the existence and scope of such joint adventure.

Keeping in mind the foregoing discussion, let us now turn to a consideration of the rule of the trial court directing the production of books and papers. This rule or order is quite long and is divided into eighteen paragraphs. The defendants are ordered to produce the following:

"1. The securities register, or other registers, of the said Fairbanks Morse & Company in which is kept and registered the description of securities of other corporations, including the capital stock thereof owned by the said Fairbanks Morse & Company.

"2. The books and records, including the check books, check register and cancelled checks of the said Fairbanks Morse & Company showing expenditures and disbursements made by the said company since the 1st day of January A. D. 1927, for and on behalf of the Municipal Utilities Company of Des Moines and the Emmetsburg Municipal Electric Light & Power Company, and also the account, or accounts, showing receipts taken and handled by Fairbanks Morse & Company resulting from the operation of an electric light and power plant erected in the city of Emmetsburg under and by virtue of the franchise heretofore granted to the Municipal Utilities Company.

"3. All the correspondence passing from the defendant Fairbanks Morse & Company to the defendant Municipal Utilities Company, the officers, agents and employees of the said Fairbanks Morse & Company and of the Municipal Utilities Company, subsequent to January 1st, 1928, with reference to the erection of an electric light and power plant and distribution system in the City of Emmetsburg in the year 1928, under and by virtue of the franchise granted to the Municipal Utilities Company of Des Moines, Iowa.

"4. Copy of the agreement entered into by and between the said Fairbanks Morse & Company and the Municipal Utilities Company of Des Moines, Iowa, and the officers and agents of said company, for the furtherance and sale of Diesel engines in the State of Iowa by said defendant Municipal Utilities Company, with special reference to that part of said contract covering the proposed erection, and subsequent erection, of an electric light and power plant and distribution system in the said City of Emmetsburg, Iowa, under and by virtue of the said Franchise heretofore obtained by the defendant Municipal Utilities Company.

"5. The minute book showing the proceedings of the meetings of the Board of Directors of defendants Fairbanks Morse & Company from the 1st day of January A. D. 1928.

"6. The stock book of the Municipal Utilities Company of Des Moines, Iowa, showing the amount of capital stock outstanding at the present time and the amount outstanding at any time since the incorporation of said company and the names of the registered holders thereof.

"7. The securities register or other documents of the said Municipal Utilities Company in which is kept and registered the description of securities of other corporations, including capital stock thereof owned by the said Municipal Utilities Company.

"8. The books and records, including the check books, check register and cancelled checks of the said Municipal Utilities Company of Des Moines, Iowa, showing receipts and disbursements from July 1st, 1928, with particular reference to an account in said book, or books, showing disbursements and expenditures made by the said Municipal Utilities Company to the Emmetsburg Municipal Electric Light & Power Company, and during the aforedescribed period, disbursements on behalf of, or advances made to, the said Emmetsburg Municipal Electric Light & Power Company.

 • "9. Memoranda, or agreement, if in writing, whereby the plant and distribution system erected in the City of Emmetsburg, Palo Alto County, Iowa, by the Municipal Utilities Company was transferred and conveyed to the Emmetsburg Municipal Electric Light & Power Company.

"10. All correspondence passing from the Municipal Utilities Company to the defendant Emmetsburg Municipal Electric Light & Power Company since July 1st, 1928, or at least since the time said Emmetsburg Municipal Electric Light & Power Company was formed, dealing with the management and operation of said electric light plant and distribution system.

"11. The minutes of the meetings of the Board of Directors of the defendant Municipal Utilities Company from the time of its incorporation.

"12. The stock book of the Emmetsburg Municipal Electric Light & Power Company showing the amount of capital stock of said company.

"13. The minute book of the said defendant Emmetsburg Municipal Electric Light & Power Company, showing the corporate

doings of said company and the meetings of the Board of Directors thereof from the time of its incorporation, with special reference to the resolutions passed therein concerning the right and interest therein of defendant Fairbanks Morse & Company in and to the said electric light plant and distribution system herein referred to.

"14. That part of the records of the said Emmetsburg Municipal Electric Light & Power Company showing participation in its active management and operation by the defendant Fairbanks Morse & Company and defendant Municipal Utilities Company.

"15. The contract or conveyance executed by and between the defendant Municipal Utilities Company of Des Moines, Iowa, and the defendant Emmetsburg Municipal Electric Light & Power Company, covering the transfer of the said electric light plant and distribution system erected in the City of Emmetsburg by the Municipal Utilities Company of Des Moines, Iowa, this said item herein referring not to the instrument of record in Palo Alto County, Iowa, but to the secret or private agreement of writing had between the two defendant corporations wherein the rights of each was fixed therein.

"16. All correspondence passing between the defendant Emmetsburg Municipal Electric Light & Power Company and the defendant Municipal Utilities Company of Des Moines, Iowa, and correspondence passing between defendant Emmetsburg Municipal Electric Light & Power Company and defendant Fairbanks Morse & Company since the date of the incorporation of the said Emmetsburg Municipal Electric Light & Power Company, with particular reference to that part of said correspondence setting out and showing active participation in the management and operation of said plant by the defendant Fairbanks Morse & Company and the Municipal Utilities Company.

"17. That defendants Fairbanks Morse & Company and Municipal Utilities Company furnish and make accessible to plaintiff that part of the records of both of defendant corporations showing the names of the employees of said corporations engaged in the furtherance and expansion of defendant corporations in the State of Iowa during the years 1928 and 1929.

"18. That the aforedescribed books, papers, records, writings and memoranda should be forthwith brought and placed by defendants herein named and made accessible to plaintiff or his attorney

for their examination, inspection and copying, to all of which said ruling defendants, and each of them, except."

Paragraphs 1 and 7 of this rule call for the production, respectively, of the securities register or other registers of the defendants Fairbanks Morse & Company and Municipal Utilities Company, in which is kept and registered the description of securities of other corporations, including capital stock thereof owned by these two defendants. These matters are in no way material as tending to prove the existence of either agency or a joint adventure.

Paragraphs 6 and 12 call for the production, respectively, of the stock books of the defendants Municipal Utilities Company and Emmetsburg Municipal Electric Light & Power Company. Neither of these stock books are material as tending to prove the existence of either agency or a joint adventure.

The first part of paragraph 2 calls for books and records, including check books, check register and cancelled checks of the defendant Fairbanks Morse & Company, showing expenditures and disbursements since the first day of January, 1927, on behalf of the defendants Municipal Utilities Company and Emmetsburg Municipal Electric Light & Power Company. This requires the defendant Fairbanks Morse & Company to produce all such books, records, etc., showing expenditures and disbursements on behalf of the defendant Municipal Utilities Company, regardless of whether such expenditures and disbursements had any connection with the franchise, erection or operation of the power and light plant at Emmetsburg. The matters thus ordered produced should have been limited to such as showed expenditures and disbursements on behalf of the Municipal Utilities Company in connection with the procuring of the franchise, erection and operation of the plant at Emmetsburg.

Paragraph 5 calls for the production of the minute book showing the proceedings of the board of directors of the defendant Fairbanks Morse & Company. This should have been limited to such portions of the minute book as show proceedings having reference to negotiations or dealings of the Fairbanks Morse & Company with the other defendants, or either of them, in connection with the procuring of the franchise, erection and operation of the plant at Emmetsburg, Iowa. The matters called for in the last part of Paragraph 2 and in Paragraphs 3, 4, 8, 9, 10, 13, 14, 15 and 16 all appear to be limited to matters which have some connection with the fran-

chise for, or the erection or operation of, the plant at Emmetsburg, Iowa, and, as thus limited, the order for their production should stand.

Paragraph 18 directs that all of the books, papers, writings and memoranda included in the order "should be forthwith brought and placed by defendants herein named and made accessible to plaintiff or his attorney." Apparently, this means that all of this documentary evidence must be produced in the district court of Palo Alto County. The order also fails to make any provision for sealing up immaterial parts of the books and papers.

It is quite probable that the production in the district court of Palo Alto County of many of the books and papers ordered to be produced by the defendants Fairbanks Morse & Company and Municipal Utilities Company might impose a great burden upon and cause serious expense to these defendants, as well as seriously interfere with the orderly transaction of their business at their respective principal places of business. We believe, therefore, that the order should be modified so as to permit all of the defendants to seal up parts of the books which do not have any reference to the procuring of the franchise, erection or operation of the plant at Emmetsburg, Iowa, and that the books and papers of the defendants Fairbanks Morse & Company and Municipal Utilities Company should be ordered produced at their respective offices or principal places of business, at such reasonable times and under such reasonable conditions as may be determined by the trial court.

The order under review is, therefore, in part reversed, in part affirmed, and in part modified, as hereinbefore indicated.—Writ sustained in part; annulled in part.

All the Justices concur.