**UNITED VACCINES, INC., Plaintiff,**

v.

**DIAMOND ANIMAL HEALTH, INC. and Heska Corporation, Defendants.**

No. 05–C–604–C.

United States District Court, W.D. Wisconsin.

Jan. 12, 2006.

Bruce A. Schultz, Coyne, Schultz, Becker & Bauer, S.C., Madison, WI, Thomas Withrow, Locke Reynolds LLP, Indianapolis, IN, for Plaintiffs.

Kristin Graham Noel, Emily Feinstein and Andrew Norman, Quarles & Brady, Madison, WI, for Defendants.

## OPINION and ORDER

CRABB, District Judge.

In this civil action for injunctive and monetary relief, plaintiff United Vaccines, Inc. asserts a variety of contract and tort claims arising out of an agreement it signed with defendant Diamond Animal Health, Inc., a wholly owned subsidiary of defendant Heska Corporation, concerning the manufacture and delivery of animal vaccines. The case was removed to this court from the Circuit Court for Dane County on October 13, 2005. Jurisdiction is predicated on diversity of citizenship. 28 U.S.C. § 1332(a)(1). (In the notice of removal, defendants state that plaintiff is a corporation formed under the laws of Indiana with its principal place of business in Madison, Wisconsin; defendant Diamond Animal Health is a corporation formed under the laws of Iowa with its principal place of business in Des Moines, Iowa; and defendant Heska Corporation is a corporation formed under the laws of Delaware with its principal place of business in Loveland, Colorado. The amount in controversy is alleged to be in excess of $75,000.00.)

The parties tripped over themselves and each other in the early stages of this case, with the result a crowded and confusing docket. On October 20, 2005, defendants filed their answer to plaintiff's complaint and a motion to dismiss pursuant to Fed. R.Civ.P. 9(b) and 12(b)(6). On November 16, 2005, plaintiff filed a brief in opposition to the motion to dismiss and an amended complaint that purported to address some of the deficiencies that defendants highlighted in their motion to dismiss. On November 30, 2005, defendants filed a reply brief in support of their motion to dismiss the original complaint and a motion to dismiss the amended complaint. At present, there are two fully briefed motions to dismiss pending in this case.

"When a plaintiff files an amended complaint, the new complaint supersedes all previous complaints and controls the case from that point forward." *Massey v. Helman,* 196 F.3d 727, 735 (7th Cir.1999). Therefore, the original complaint is no longer the operative pleading in this case and defendants' motion to dismiss the original complaint will be denied as moot. However, because the two complaints are identical in almost all respects, I will consider the arguments presented in support of and in opposition to defendants' motion to dismiss the original complaint to the extent they are applicable to the amended complaint.

For the reasons stated below, defendants' motion to dismiss the amended complaint will be granted in part and denied in part. I will dismiss plaintiff's negligent misrepresentation and strict responsibility for negligent misrepresentation claims because they are barred by the economic loss doctrine. However, the doctrine does not bar a contract action based on an intentional misrepresentation. Therefore, plaintiff will be allowed to proceed on this claim. Defendants' motion will be denied with respect to their argument that plaintiff failed to plead its fraud claim with sufficient particularity. In addition, defendants' motion to dismiss will be denied with respect to plaintiff's breach of contract and breach of warranty claims against defendant Heska because plaintiff has alleged that defendant Heska controlled defendant Diamond in the negotiating process. Finally, defendants' motion will be granted with respect to their argument that the contract precludes plaintiff from obtaining damages for lost sales and lost customers. If plaintiff prevails on its intentional misrepresentation claim and elects to affirm the contract and seek damages, it will not be allowed to recover damages for lost sales and lost customers.

I draw the following factual allegations from the amended complaint, the notice of removal and the contract, which is referred to in the amended complaint as the "Manufacturing Agreement" and which was submitted in connection with defendants' motion to dismiss the original complaint. *Levenstein v. Salafsky,* 164 F.3d 345, 347 (7th Cir.1998) (consideration of contract attached to motion to dismiss appropriate if contract is referred to in complaint and is central to plaintiff's claims).

## ALLEGATIONS OF FACT

Plaintiff United Vaccines, Inc. is a corporation formed under the laws of Indiana with its principal place of business in Madison, Wisconsin. Plaintiff is a wholly owned subsidiary of Harlan Sprague Dawley, Inc. and is in the business of providing animal vaccines and related products to purchasers around the world. Defendant Diamond Animal Health, Inc. (Diamond) is a corporation formed under the laws of Iowa with its principal place of business in Des Moines, Iowa. Defendant Diamond Animal Health is a wholly owned subsidiary of defendant Heska Corporation (Heska), which is a Delaware corporation with its principal place of business in Loveland, Colorado. Defendants manufacture products for companies in the biotechnology industry, including plaintiff.

Plaintiff provides many of its products throughout the United States, Canada and Europe to mink ranchers, who seasonally vaccinate mink against a variety of common illnesses, including distemper. In order for plaintiff's products to provide protection against distemper, they must be used at a particular time of the year. If plaintiff's customers do not vaccinate mink at the proper time of the year, the vaccinations may not protect the animals against distemper.

In 2001, plaintiff and defendants began negotiating terms of an agreement whereby defendant Diamond would manufacture certain vaccines for plaintiff. During those negotiations, defendants were made aware of the needs of plaintiff's customers and the intended uses for the vaccines. Defendants' representatives told plaintiff's representatives that defendant Diamond had the requisite experience, knowledge, expertise, facilities and personnel to manufacture the products listed in the agreement and to perform its other obligations in safe, lawful and workmanlike manner. This representation was first made in June and July 2001 by Mike McGinley, Vice President of Operations and Technical Affairs for defendant Heska, and Mike Johnson and Laurie Peterson, technical and compliance employees for defendant Diamond to Connie Phillips, Ed Carroll and Robert Norberg, employees of plaintiff. Additionally, McGinley, Johnson and Peterson told plaintiff that defendant Diamond was willing to produce plaintiff's products in quantities and potency sufficient to satisfy the needs of plaintiff's customers and to deliver the products in a timely manner so that plaintiff's customers could vaccinate their animals at the appropriate time of year.

Plaintiff relied on these representations in entering into the Manufacturing Agreement. Without them, plaintiff would not have entered into the agreement. The representations were incorporated into the agreement, which the parties signed on January 1, 2003. Defendant made these representations negligently or fraudulently. Although plaintiff has complied with all of its obligations under the agreement, defendants have failed to manufacture and deliver products according to the terms of the agreement without reasonable justification or excuse. Plaintiff has sustained significant monetary damages in the form of lost sales and lost customers.

The Manufacturing Agreement between defendant Diamond and plaintiff is dated January 1, 2003. In section 3.1 of the agreement, defendant Diamond agrees to manufacture and plaintiff agrees to purchase "quantities of Products pursuant to and in accordance with the terms and conditions" of the agreement. Section 4.6 gives plaintiff the right to inspect and test samples of the products and provides:

If any non-conformities with Specifications are established prior to the time Customer is obligated to pay for the Products, then Customer shall not be obligated to pay for the Products and the non-conforming Products shall become the property of and be returned to Diamond at Diamond's expense, with Diamond reprocessing or disposing of such Products at its own expense according to all appropriate regulations. If the nonconformity is established after payment, the provisions of Section 8.3 shall be deemed to apply.

Section 8.3 sets out plaintiff's available remedies if any product shipped by defendant Diamond breaches defendant's warranty that all products delivered to plaintiff shall comply with the specifications of the agreement and be free from defects in workmanship and materials. In that case, plaintiff may choose from the following options: (1) replacement of the non-conforming product or (2) defendant Diamond "shall be relieved of any obligation to deliver any conforming Product and Diamond shall either credit against future purchases by Customer the purchase price and shipping costs of such non-conforming Product paid by Customer or refund the price and such costs to Customer."

Section 8.4 governs the parties' rights and obligations in the event of a product recall. It provides that defendant Diamond

shall substitute Product at no cost to the Customer to complete any Product re-

call required under applicable regulations by subsequent determination that the Product was not produced in accordance with Specifications when released to the Customer or was not produced in compliance with applicable regulations when released to Customer. Diamond shall be responsible for Customer's reasonable costs and expenses in connection with any such Product recall, unless proper potency testing by Customer prior to sale of Products would have disclosed such nonconformity. The Customer shall be responsible for all other recalls.

Section 8.7(b) sets forth a limitation on the remedies available to the parties. It states that

Subject to each party's indemnification obligations set forth in section 11 hereof with respect to third party claims, in no event shall either party be liable to the other party for lost profits, loss of goodwill, or any special, indirect, consequential or incidental damages, however caused, arising under any theory of liability. This limitation shall apply even if a party has been advised of the possibility of such damages, and not withstanding any failure of essential purpose of any limited remedy.

Finally, section 12.4 provides that the "validity, interpretation and performance of this Agreement shall be governed and construed in accordance with the internal laws of the State of Iowa excluding the body of law related to choice of law."

## OPINION

Plaintiff's amended complaint sets out seven claims against defendants: negligent misrepresentation, strict responsibility for negligent misrepresentation, intentional misrepresentation, breach of contract, breach of warranty, a claim for punitive damages based on defendants'

alleged destruction or withholding of plaintiff's distemper products and intentional interference with existing contracts. (Plaintiff asserted the first six of these claims in its original complaint.) From defendants' motions to dismiss the original and amended complaints, I understand defendants to assert four separate grounds for dismissal: (1) plaintiff's misrepresentation claims must be dismissed because they are barred by the economic loss doctrine; (2) plaintiff failed to plead its intentional misrepresentation claim with the particularity as required by Fed.R.Civ.P. 9(b); (3) plaintiff's breach of contract and breach of warranty claims should be dismissed with respect to defendant Heska because it was not a party to the Manufacturing Agreement; and (4) plaintiff is not entitled to damages for its lost sales and customers under the agreement. I will examine each argument separately.

### A. *Economic Loss Doctrine*

Defendants argue first that plaintiff's misrepresentation claims must be dismissed because they are barred by the economic loss doctrine. Before I can address this argument, I must determine which state's law is applicable to plaintiff's misrepresentation claims. Plaintiff contends that the choice of law provision in the Manufacturing Agreement that designates Iowa law applies to its misrepresentation claims. Defendants argue that Wisconsin law applies to these claims because they are tort claims and thus not covered by the choice of law provision in the agreement.

### 1. *Choice of law*

In a federal lawsuit based upon diversity of citizenship, the court will apply the choice of law principles of the jurisdiction in which it sits to determine the substantive law that will apply. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Therefore, Wisconsin's choice of law principles apply. Wisconsin law generally recognizes validly executed choice of law provisions provided there are no public policy reasons to disregard them. *Bush v. National School Studios, Inc.*, 139 Wis.2d 635, 642, 407 N.W.2d 883 (1987). The choice of law provision in the Manufacturing Agreement provides that Iowa law governs the "validity, interpretation and performance" of the agreement. In its misrepresentation claims, plaintiff alleges that defendants negligently or intentionally misrepresented their ability to produce vaccines in sufficient quantities and potency, that plaintiff relied on these alleged misrepresentations in entering into the contract with defendants and that defendants have failed to manufacture and deliver the vaccines according to the terms of the agreement.

Defendants argue that the misrepresentation claims are tort claims that fall outside the scope of the choice of law provision. *CERAbio LLC v. Wright Medical Technology, Inc.*, 410 F.3d 981, 987 (7th Cir.2005) (citing *Kuehn v. Children's Hospital, Los Angeles*, 119 F.3d 1296, 1302 (7th Cir.1997) ("A choice of law provision will not be construed to govern tort as well as contract disputes unless it is clear that this is what the parties intended.")). In *CERAbio*, the parties entered into a contract whereby the defendant agreed to purchase all of plaintiff's assets. However, the parties failed to complete the transaction and plaintiff sued for breach of contract. *CERAbio*, 410 F.3d at 986. The defendant asserted a breach of contract counterclaim in addition to counterclaims of "fraudulent inducement of the contract, fraud in the performance of the contract, pre-contract negligent misrepresentation, and negligent misrepresentation in the performance of the contract." *Id.* The court of appeals characterized these as tort

claims and agreed with the district court that they were not governed by a choice of law provision in the contract. *Id.* at 987.

Plaintiff's misrepresentation claims appear indistinguishable from the counterclaims in *CERAbio* and plaintiff has made no attempt to distinguish the present case from *CERAbio.* Because there is no indication that the parties intended the choice of law provision to cover tort claims, I conclude that the misrepresentation claims are not subject to that provision. Further, because plaintiff advances no other reason to apply Iowa law, I will look to Wisconsin law to determine whether plaintiff's misrepresentation claims are barred by the economic loss doctrine.

2. *Background principles*

▓▓ The economic loss doctrine is often raised in cases like this one involving tort claims that arise in the context of a commercial relationship. The basic purpose of the doctrine is often repeated and is now generally uncontroversial; it is to prevent dissatisfied buyers from using tort law to recover losses that were or should have been protected against through contract law. *Digicorp, Inc. v. Ameritech Corp.,* 2003 WI 54, ¶ 35, 262 Wis.2d 32, 662 N.W.2d 652. Simply stated, the doctrine "bars tort recovery for economic loss suffered by commercial entities," *State Farm Mutual Automobile Insurance Co. v. Ford Motor Co.,* 225 Wis.2d 305, 311, 592 N.W.2d 201, 204 (1999), and requires sophisticated commercial parties to "pursue only their contractual remedies when asserting an economic loss claim, in order to preserve the distinction between contract and tort law." *Digicorp, Inc.,* 2003 WI 54, ¶ 34, 262 Wis.2d 32, 662 N.W.2d 652. "That is, when contractual expectations are frustrated because of a defect in the subject matter of the contract, a party's remedy lies exclusively in contract." *Raytheon Co. v. McGraw–Edison Co., Inc.,* 979 F.Supp. 858, 866 (E.D.Wis.1997). The doc-

trine precludes recovery in tort for a product's failure to perform as intended and for a party's failure to live up to its contractual obligations. *Kaloti Enterprises, Inc. v. Kellogg Sales Company,* 2005 WI 111, ¶ 29, 283 Wis.2d 555, 699 N.W.2d 205. It does not preclude tort recovery where a product causes personal injury or damage to other property. *Stoughton Trailers, Inc. v. Henkel Corp.,* 965 F.Supp. 1227, 1231 (W.D.Wis.1997).

▓▓ The economic loss doctrine is based on three underlying policies. First, as noted above, the doctrine preserves the distinction between contract law and tort law. *Daanen & Janssen, Inc. v. Cedarapids, Inc.,* 216 Wis.2d 395, 403, 573 N.W.2d 842, 846 (1998). Contract law is better suited to deal with economic loss in the commercial arena. *Id.* at 404, 573 N.W.2d at 846; *see also Miller v. United States Steel Corp.,* 902 F.2d 573, 574 (7th Cir. 1990) (finding tort law to be "a superfluous and inapt tool for resolving purely commercial disputes"). Contract law is concerned with protecting the parties' bargained-for expectations. The duties of the parties are stated in the terms of the contract and arise from those terms. The parties are encouraged to protect themselves by stating their expectations and allocating the risk that one of the parties might not satisfy those expectations. *Bay Breeze Condo. Assn. Inc. v. Norco Windows, Inc.,* 2002 WI App 205, ¶ 12, 257 Wis.2d 511, 651 N.W.2d 738. This protection is achieved through the inclusion, exclusion, or limitation of express and implied warranties within the agreement. *Id.* When a dispute arises concerning the subject matter of the parties' agreement, a court's role is "to hold parties to that agreement so that each receives the benefit of his or her bargain." *Wausau Tile, Inc. v. County Concrete Corp.,* 226 Wis.2d 235, 247–48, 593 N.W.2d 445, 451–52

(1999). In order to preserve the parties' bargained-for allocations of economic risk, courts will prevent parties from bringing tort actions that would effectively rewrite the agreement to circumvent express allocations of risk. *Id.*

Second, the doctrine exists to protect the freedom of parties to allocate economic risk by contract. *Kaloti Enterprises*, 2005 WI 111, ¶ 28, 283 Wis.2d 555, 699 N.W.2d 205. Third, the doctrine encourages the party in the best position to assess risk, the purchaser, "to assume, allocate or insure against [that] risk." *Daanen & Janssen*, 216 Wis.2d at 410, 573 N.W.2d at 849. "In determining whether the economic loss doctrine should be applied, a court must examine the nature of the damages complained of, the risk that caused them to arise and how that risk impacts on the policies underlying the doctrine." *Prent Corp. v. Martek Holdings, Inc.*, 2000 WI App 194, ¶ 19, 238 Wis.2d 777, 618 N.W.2d 201.

### 3. *Application to plaintiff's claims*

In this case, plaintiff has asserted claims of negligent misrepresentation, strict responsibility for negligent misrepresentation and intentional misrepresentation. It contends that it has lost sales and lost customers and requests several forms of relief, including rescission of the Manufacturing Agreement and compensatory and punitive damages. As noted above, the crux of plaintiff's misrepresentations claims are its allegations that defendants negligently or intentionally misrepresented "their ability to manufacture Products pursuant to specifications and in a timely manner in sufficient quantities and potency," Am. Cpt., dkt. # 15, at ¶ 20, that plaintiff relied justifiably on these misrepresentations and that it was induced by the misrepresentations to enter into the agreement.

First, there is no doubt that the losses claimed by plaintiff are economic in nature. That is, plaintiff incurred damages not because defendants' failure to produce the vaccines injured someone or some other property, but because defendants allegedly failed to live up to their contractual obligations. Second, the risk that defendants would not produce vaccines according to the specifications in the Manufacturing Agreement was addressed in the agreement. In section 8.1(a), defendant Diamond warrantied that "the Products delivered to Customer hereunder shall conform to the Specifications and shall be free from material defects in workmanship and materials through their respective labeled expiration dates." In section 8.3, the parties limited the remedies available to plaintiff in the event that defendant Diamond breached its warranty to (1) replacement of the non-conforming product or (2) credit against future purchases by plaintiff or refund of the purchase price and shipping costs to plaintiff. By bringing misrepresentation claims, plaintiff seeks to go beyond its contractual remedies and recover tort damages that are a consequence of defendant Diamond's alleged failure to live up to its contractual obligations. "The laws of contract and of warranty, as well as the Uniform Commercial Code, are designed to protect the expectancy interest of the parties to private, bargained-for commercial agreements." *Prent Corp.*, 2000 WI App 194, ¶ 21, 238 Wis.2d at 791, 618 N.W.2d at 207 (dismissing buyer's negligent misrepresentation claim grounded on seller's failure to supply software according to terms of contract between them). Plaintiff could have bargained for a provision that allowed it to recover consequential damages or sought other assurances that defendant would fulfill its representations, but it did not. It is stuck with the bargain it struck with defendant.

### a. Strict responsibility and negligent misrepresentation

There is ample authority for the proposition that the economic loss doctrine bars plaintiff's negligent misrepresentation and strict responsibility claims for money damages. *E.g., Kaloti Enterprises*, 2005 WI 111, ¶ 30, 283 Wis.2d 555, 699 N.W.2d 205 (citing cases); *Van Lare v. Vogt, Inc.*, 2004 WI 110, ¶¶ 21–28, 274 Wis.2d 631, 683 N.W.2d 46 (strict responsibility claim barred by economic loss doctrine); *Selzer v. Brunsell Brothers, Ltd.*, 2002 WI App 232, ¶¶ 31–39, 257 Wis.2d 809, 652 N.W.2d 806 (strict responsibility and negligent misrepresentation); *Prent Corp.*, 2000 WI App 194, ¶ 21, 238 Wis.2d 777, 618 N.W.2d 201 (negligent misrepresentation). *See also Badger Pharmacal, Inc. v. Colgate–Palmolive Co.*, 1 F.3d 621 (7th Cir.1993) (applying Wisconsin law and concluding that economic loss doctrine bars strict responsibility and negligent misrepresentation claims). In light of this authority, I conclude that plaintiff's strict responsibility and negligent misrepresentation claims for damages are barred.

### b. Intentional misrepresentation

 Plaintiff's intentional misrepresentation claim requires further discussion. This claim is properly characterized as alleging fraud in the inducement; plaintiff contends that defendant's fraudulent misrepresentations induced it to enter into the contract. Wisconsin law recognizes an exception to the economic loss doctrine for intentional misrepresentation claims that allege fraud in the inducement. *Kailin v. Armstrong*, 2002 WI App 70, ¶¶ 28–30, 252 Wis.2d 676, 643 N.W.2d 132. The rationale behind this exception is that "when an intentional misrepresentation fraudulently induces a party to enter into a contract, the parties appear to negotiate freely, but, in fact, one party's ability to negotiate fair terms and make an informed decision is undermined by the other party's fraudu-

lent conduct." *Id.* at ¶ 28, 643 N.W.2d 132 (citing *Douglas–Hanson Co., Inc. v. BF Goodrich Co.*, 229 Wis.2d 132, 144–45, 598 N.W.2d 262 (Ct.App.1999)). Moreover, "the person fraudulently induced to enter the contract can affirm or avoid the contract, and in so electing, has the option of selecting tort or contract damages," an option that is inconsistent with the economic loss doctrine, "which requires that the contract be affirmed." *Douglas–Hanson*, 229 Wis.2d at 145, 598 N.W.2d at 268–69.

 Until recently, the scope of the fraud in the inducement exception was unclear. In *Kaloti Enterprises*, 2005 WI 111, ¶ 31, 283 Wis.2d 555, 699 N.W.2d 205, the Wisconsin Supreme Court described the state of the law surrounding a fraud in the inducement exception in the following terms:

> Courts have generally taken three different approaches in determining whether and to what extent there is a fraud in the inducement exception to the economic loss doctrine: (1) no exception; (2) a general exception for all fraud in the inducement claims; (3) a narrow exception for fraud in the inducement where the fraud is not interwoven with the quality or character of the goods for which the parties contracted or otherwise involved performance of the contract.

In *Kaloti Enterprises*, the court adopted a narrow exception for fraud in the inducement claims. It held that "a fraud in the inducement claim is not barred by the economic loss doctrine 'where the fraud is extraneous to, rather than interwoven with, the contract.'" *Id.* at ¶ 42, 699 N.W.2d 205 (quoting *Digicorp*, 2003 WI 54, ¶ 47, 262 Wis.2d 32, 662 N.W.2d 652). For the exception to apply, the fraud must concern "matters whose risk and responsibility did not relate to the quality or char-

acteristics of the goods for which the parties contracted." *Kaloti Enterprises,* 2005 WI 111, ¶ 42, 283 Wis.2d 555, 699 N.W.2d 205. *See also Huron Tool & Engineering Co. v. Precision Consulting Services, Inc.,* 209 Mich.App. 365, 532 N.W.2d 541, 545 (1995) (misrepresentations that relate to breaching party's performance are "interwoven with the breach of contract" and "do not give rise to an independent cause of action in tort"). The court was satisfied that this narrow exception did not undermine the polices underlying the doctrine. *Kaloti Enterprises,* 2005 WI 111, ¶ 46, 283 Wis.2d 555, 699 N.W.2d 205 ("Matters that are expressly or implicitly dealt with in the contract, such as the performance or the quality or character of the goods sold, still must be addressed by contract law.").

■ I agree with defendants that plaintiff's tort claim for intentional misrepresentation does not fall within the narrow exception adopted in *Kaloti Enterprises.* Plaintiff's claim rests on defendants' allegedly fraudulent statements that it was capable of producing vaccines in sufficient quantities and potency. In other words, the alleged misrepresentations related to defendants' performance under the contract. As plaintiff concedes, the allegedly fraudulent misrepresentations are memorialized in section 8.1 of the Manufacturing Agreement. Therefore, plaintiff's tort claim for intentional misrepresentation is barred by the economic loss doctrine.

c. Rescission

■ Although plaintiff did not ask for rescission of the Manufacturing Agreement in its original complaint, it has asked for such relief in its amended complaint. This suggests that plaintiff may have intended to assert a contract claim for intentional misrepresentation. (Wisconsin law recognizes that an action for fraud/intentional misrepresentation may lie in either contract or tort. *First National Bank & Trust Co. of Racine v. Notte,* 97 Wis.2d 207, 293 N.W.2d 530 (1980).) It contends that the economic loss doctrine does not apply to a fraud in the inducement claim where the remedy sought is rescission. I agree.

■ In a recent case, the Court of Appeals for the Seventh Circuit noted that no Wisconsin court has addressed the question "whether the economic loss doctrine bars a claim for fraudulent inducement when the remedy sought is rescission." *Harley–Davidson Motor Co., Inc. v. Powersports Inc.,* 319 F.3d 973, 983 (7th Cir.2003). However, the court noted that "the Supreme Court of Wisconsin has repeatedly recognized a party's right to seek rescission under contract law where its assent was induced by a material or fraudulent misrepresentation. The defrauded party can elect whether to seek rescission or affirm the contract and seek damages." *Id.* After examining Wisconsin case law concerning rescission in the context of misrepresentation claims, the court of appeals concluded that the rationale underlying the economic loss doctrine was inapplicable to misrepresentation claims for rescission because "both the laws of contract and tort recognize a duty not to fraudulently induce a person into a bargain." *Id.* at 986. The court summarized its analysis by stating that

The economic loss doctrine is intended to keep a party from effecting an end run around contract law to recover under tort law what it could not recover under contract law and through contract remedies. Here, Harley–Davidson is not seeking to end run around contract law; rather, it is seeking a remedy expressly given to it through contract law—rescission of contract as expounded in *Notte.* Harley–Davidson's claim for rescission does not give it something in tort that was unavailable to it in contract.

*Id.* at 987 (citations and quotations omitted). The court held Wisconsin law would allow a party may bring an action for rescission based on fraud in the inducement. *Id.*

The Wisconsin Supreme Court has described *Harley–Davidson* as providing "an excellent summary of our rationale for the economic loss doctrine." *Digicorp,* 2003 WI App 54, ¶ 35 n. 7, 262 Wis.2d 32, 662 N.W.2d 652. I am persuaded that the decision in *Harley–Davidson* accurately predicts the Wisconsin Supreme Court's resolution of the question whether a contract action for intentional misrepresentation claim alleging fraud in the inducement would survive application of the economic loss doctrine where the plaintiff has requested rescission of the contract. Therefore, I will allow plaintiff's intentional misrepresentation claim to go forward. If plaintiff prevails, it will be able to choose between rescinding the contract or affirming it and collecting damages. However, plaintiff should be aware that its damages will be contract damages, not tort damages. Therefore, its damages will be limited to those allowable under the terms of the contract.

It may be that the foregoing discussion of the economic loss doctrine will prove to be much ado about nothing. In its brief in opposition to defendants' motion to dismiss the amended complaint, plaintiff contends that it is seeking "(1) rescission of the written contract and (2) damages for Defendants' breach of the contract that was formed by the parties' conduct." Plt.'s Resp. Br. to Mot. to Dismiss Am. Cpt., dkt. # 21, at Part II(D). From this statement, it could be inferred that plaintiff never intended to seek money damages in connection with its misrepresentation claims. However, because it is not clear that this is plaintiff's intention, I have analyzed the applicability of the economic loss doctrine to make it clear that plaintiff may proceed only on an action in contract for intentional misrepresentation.

### B. *Failure to Plead with Particularity*

Defendants argue that plaintiff's intentional misrepresentation claim should be dismissed without prejudice because it fails to satisfy the heightened pleading standard for fraud in Fed. R.Civ.P. 9(b), which states that "all averments of fraud ... shall be stated with particularity." To satisfy Rule 9(b)'s particularity requirements, plaintiff must allege "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Slaney v. The International Amateur Athletic Federation,* 244 F.3d 580, 599 (7th Cir.2001); *see also Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F.2d 677, 683 (7th Cir.1992). Defendant argued that plaintiff's original complaint lacked sufficient detail with respect to the intentional misrepresentation claim. However, plaintiff has cured that deficiency in its amended complaint. It alleges that the misrepresentation concerning defendant Diamond's ability and willingness to produce vaccines timely and in sufficient quantities and potency was made by Mike McGinley, an employee of defendant Heska, and Mike Johnson and Laurie Peterson, employees of defendant Diamond, to Robert Norberg and Ed Carroll, employees of plaintiff, during meetings in Des Moines, Iowa in June and July 2001. Am. Cpt., dkt. # 15, at ¶ 4. This is sufficient to meet the heightened pleading standard of Rule 9(b).

### C. *Breach of Contract and Breach of Warranty Claims against Defendant Heska*

Defendants request that plaintiff's breach of contract and breach of warranty claims be dismissed with respect to defen-

dant Heska because it was not a party to the Manufacturing Agreement and plaintiff has not alleged that defendant Heska is obligated under the agreement. (Because these claims concern performance under the agreement, they are subject to the choice of law provision and therefore governed by Iowa law.) The Manufacturing Agreement lists only plaintiff and defendant Diamond as parties. Representatives of those two entities signed the agreement. Defendant Heska is not mentioned in the agreement. Nonetheless, plaintiff argues that defendant Heska "exercises and asserts control over Diamond in its management, business activities and operations with customers such as United and that together Heska and Diamond manufacture and provide products to the biotechnical community and to United." Plt.'s Resp. to Def.'s Mot. to Dismiss, dkt. # 16, at 14. Moreover, plaintiff argues that defendant Heska "asserted control over Diamond in the formation of the Contract through the misrepresentations and in the other specific tortious acts which damaged United" and may have "directly or indirectly interfered" with the parties' performance under the Manufacturing Agreement. *Id.*

▇▇▇▇ As a general proposition, a party to a contract may not recover for breach of contract from an entity who is not a party to the contract according to its express terms. *Leytham v. Hassett*, 200 Iowa 199, 204 N.W. 237, 238 (Iowa 1925). Moreover, the fact that defendant Heska owns all of the stock of defendant Diamond does not by itself make defendant Heska liable for defendant Diamond's contracts. *Fairbanks Morse & Co. v. District Court in & for Palo Alto County*, 215 Iowa 703, 247 N.W. 203, 207 (Iowa 1933). However, a court may pierce the corporate veil and hold a parent liable for a subsidiary's breach of contract to prevent a fraud. *Wescott & Winks Hatcheries v. F.M. Stamper Co.*, 249 Iowa 30, 85 N.W.2d 603, 606 (Iowa 1957). To hold defendant Heska

liable on a contract to which its subsidiary is a party, plaintiff must show that a principal-agent relationship existed between the two corporations. *Fairbanks Morse,* 247 N.W. at 207; *see also Randolph Foods, Inc. v. McLaughlin,* 253 Iowa 1258, 115 N.W.2d 868, 874 (Iowa 1962) (parent and subsidiary may be considered as one if parent "uses the subsidiary so as to make it a mere agent, or if such control is exercised in such a way as to injure a third party"). Plaintiff's allegations suggest that defendant Heska exerted enough control over defendant Diamond to hold defendant Heska liable for a breach of the Manufacturing Agreement. Therefore, I will deny defendants' motion to dismiss the breach of contract and breach of warranty claims against defendant Heska.

As a final note, I wish to make it clear that if plaintiff prevails on its intentional misrepresentation claim and elects to rescind the contract, it will not be entitled to any recovery on its breach of contract and breach of warranty claims as they relate to the Manufacturing Agreement.

### D. *Claims for Lost Sales and Customers*

Defendants argue that plaintiff's claims for lost sales and customers should be dismissed because (1) they are not available if plaintiff obtains rescission of the Manufacturing Agreement and (2) plaintiff's damages are limited by the terms of the Manufacturing Agreement. Plaintiff seeks damages for lost sales and lost customers in connection with its misrepresentation and breach of contract claims. Am. Cpt., dkt.# 15, at ¶¶ 15, 21, 24.

### 1. *Election of remedies*

▇▇ Both Iowa law and Wisconsin law recognize the election of remedies doctrine, under which a party may seek rescission of a contract and restitution or damages, but not both. *Robinson v. Per-*

*petual Services Corp.,* 412 N.W.2d 562, 568 (Iowa 1987); *Digicorp,* 2003 WI 54, ¶ 76, 262 Wis.2d 32, 662 N.W.2d 652. Therefore, if plaintiff prevails on its intentional misrepresentation claim, it would have the option of seeking rescission of the Manufacturing Agreement or affirming the agreement and seeking whatever damages are available to it under the terms of the agreement.

For its part, plaintiff states that it is not seeking both rescission of the agreement and damages for breach of the agreement. As noted above, plaintiff seeks "(1) rescission of the written contract and (2) damages for Defendants' breach of the contract that was formed by the parties' conduct." Plt.'s Br., dkt. #21, Part II(D). In plaintiff's view, the allegedly fraudulent statements made by defendants make the Manufacturing Agreement void. However, plaintiff asserts, after signing the agreement, the parties engaged in a course of dealing that gave rise to a second, implied contract under the Uniform Commercial Code. Plaintiffs contend that defendants breached this second contract and they seek damages from this breach. Pursuing rescission of the Manufacturing Agreement and damages for breach of an implied contract that arose from the parties' conduct is not a viable course of action for plaintiffs. First, in its amended complaint, plaintiff has not alleged that defendants breached an implied contract. The allegations concerning plaintiff's breach of contract claim read as follows:

23. Defendants have breached the Manufacturing Agreement with United by failing to have the expertise, facilities and qualified personnel to manufacture and deliver Products in sufficient quantity and potency in a timely manner.

24. As a result of said breach of the Manufacturing Agreement, United has suffered damages in the form of lost sales and lost customers.

Am. Cpt., dkt. #15, at 5. The amended complaint contains no mention of an implied contract that arose from the parties' conduct. Even if plaintiff had alleged that defendants breached an implied contract, it could not proceed on that claim and the claim for rescission of the Manufacturing Agreement because doing so would amount to an end run around the election of remedies doctrine. Therefore, to the extent plaintiff intended to state such a claim, it will be dismissed.

To recap, plaintiff has stated a claim for intentional misrepresentation concerning the Manufacturing Agreement. If plaintiff prevails on this claim, it may seek rescission or it may choose to affirm the contract and seek damages. However, it may not do both.

## 2. *Available damages*

■ One final argument remains to be addressed. Defendants contend that, if plaintiff elects to affirm the contract and seek damages, the terms of the contract prevent it from obtaining damages for lost sales and lost customers. They argue that sections 4.6, 8.3, 8.4 and 8.7(b) do not permit plaintiff to collect damages for lost sales and lost customers. Section 8.7(b) provides that neither party shall be liable to the other party for "lost profits, loss of goodwill, or any special, indirect, consequential or incidental damages, however caused, arising under any theory of liability." I agree with defendants that this language precludes plaintiff from obtaining damages relating to sales and customers it lost as a result of defendants' breach.

Plaintiff argues that section 8.7(b) applies only "to remedies sought for breach of section 8 of the agreement" and that the damages it seeks arose from defendants' breach of their obligation to deliver. Nothing in section 8.7(b) indicates that it applies only in the case of a breach of an

obligation in section 8. On the contrary, the limitation of remedies in section 8.7(b) is broad in scope, precluding liability for any consequential damages that either party incurs, regardless of how they are caused. Plaintiff argues also that section 8.7(b) should be applied only to breaches of section 8 because of section 7.2, which states that "if either party shall breach any material obligation required under this Agreement," the other party may give written notice of its intention to terminate the agreement, and, if the breaching party fails to remedy its breach following the notice, "the non-breaching party may, in addition to all other remedies available at law or in equity, terminate this Agreement immediately upon written notice." Plaintiff argues that if the "all remedies available at law or in equity" language is to have any meaning, section 8.7(b) must be restricted to remedies for breaches of the warranties set out in section 8.

I disagree. Section 7.2 does not provide that the parties may pursue all remedies available in law or equity in the event of a material breach. It states merely that, in addition to any other remedies that are available, the non-breaching party may terminate the agreement if the breaching party fails to take appropriate steps to cure its breach within certain time limits. Section 8.7(b) limits the remedies available to the parties. It modifies section 7.2 but does not render it completely meaningless.

I will not address plaintiff's arguments that the limitation in section 8.7(b) is unenforceable because plaintiff has not developed them. *Central States, Southeast and Southwest Areas Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 808 (7th Cir.1999) ("Arguments not developed in any meaningful way are waived.")

ORDER

IT IS ORDERED that

1. Defendants' motion to dismiss the original complaint, dkt.# 6, is DENIED as moot; and

2. Defendants' motion to dismiss the amended complaint, dkt. # 18, is GRANTED IN PART and DENIED IN PART. The motion is GRANTED with respect to plaintiff's claims of negligent misrepresentation and strict responsibility for negligent misrepresentation. Further, defendants' motion is GRANTED with respect to plaintiff's claims for damages resulting from lost sales and lost customers. Defendants' motion is DENIED with respect to plaintiff's contract claim for intentional misrepresentation. In addition, defendants' motion is DENIED with respect to its request to dismiss the intentional misrepresentation claim for failure to plead fraud with particularity and with respect to its request to dismiss the breach of contract and breach of warranty claims against defendant Heska.